## Richmond

### THE GREAT ATLANTIC AND PACIFIC TEA COMPANY, INC. v. THOMAS G. SCULLY, ET AL.

January 16, 1976.

Record No. 741098.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

*Henry H. Whiting* (*Kuykendall, Whiting & Costello*, on briefs), for plaintiff in error.

*J. Frederick Larrick* (*Larrick & White*, on brief), for defendants in error.

I'ANSON, C.J., delivered the opinion of the court.

This is an appeal from a declaratory judgment proceeding brought by Thomas G. Scully and the George Washington Hotel Corp., his successor in title, against The Great Atlantic and Pacific Tea Company, Inc. (tenant), to construe that paragraph of a lease which limits tenant's liability for real estate tax increases subsequent to its tenth year of occupancy.

On November 21, 1958, Scully leased certain premises in the City of Winchester to the tenant for a period of ten years, beginning November 1, 1959, at a monthly rental of $2,455. Scully conveyed the leased premises by deed to the George Washington Hotel Corp. on January 3, 1968. The lease granted the tenant an option of renewal for three successive five-year periods at the same monthly rent, plus

an additional sum which, under Paragraph 36 of the lease, is to be based upon an increase in real estate taxes. On May 22, 1969, the tenant exercised the renewal option, subject to the terms and conditions of the lease.

Paragraph 36 of the lease provides:

"In the event that the Lessee shall exercise its option or options to renew or extend this lease, then and in such event, *the Lessee agrees to pay as additional rent, any increase in the amount of real estate taxes over and above the real estate taxes which may be imposed and levied upon the demised property during the tenth year of occupancy,* whether the increase in taxation results from a higher tax rate or an increase in the assessed valuation of the demised premises or both. Such excess or increase in real estate taxes shall be paid in each and every year during the renewal period or periods and such amount shall be paid within thirty (30) days after notice therefor by the Lessor and shall be collectible as rent. A receipted tax bill shall be sufficient evidence of the amount of taxes and for calculation of the amount to be paid by the Lessee. *However, Lessee shall not pay more than $500.00 tax increase in any lease year.* In the event of any such increases in real estate taxes, Lessee may at its option, and at its cost and expense, in the name of the Lessor, protest, appeal or institute such other proceedings as it may consider appropriate to effect a reduction or abatement in such real estate taxes, and to this end Lessor shall cooperate fully with the Lessee, including without limitation, the furnishings of such data, documents, information and assistance, and making such appearances as may be required by Lessee." (Emphasis added.)

The trial court construed the first sentence of Paragraph 36 to mean that the tenth year of occupancy (1969) "is the only lease year upon which the calculation of increased taxes may be made." But the court interpreted the language, "However, Lessee shall not pay more than $500.00 tax increase in any lease year," to mean that "this limits only the payment in any lease year and is not a limitation upon the lessee's agreement to pay . . . any increase in . . . real estate taxes over those assessed in the tenth year; and as each year's tax is . . . determined, the lessee must pay the amount of its tax burden for the last preceding year plus the amount of the current increase, or $500.00, whichever may be the lower." In other words, the court held that for the 1970 lease year tenant would pay as additional rent any increase in taxes

over those imposed and levied in 1969, not to exceed $500. For the taxes levied in 1971, tenant would be responsible for any increase up to $500 in addition to the taxes it paid for 1970, and so on during the renewal term of the lease. Thus, in any lease year tenant would be liable for the amount paid in the preceding year plus an additional sum not to exceed $500. We do not agree with this interpretation.

The first sentence in Paragraph 36 clearly requires the tenant to pay any increase in the amount of real estate taxes which may be levied during the tenth year of occupancy. Hence, the tenth year is the only base year upon which increased taxes are to be calculated. The limitation that the tenant "shall not pay more than $500.00 tax increase in any lease year," is also clear and unambiguous. It unequivocally places a $500 ceiling upon the tenant's liability for increased taxes for each lease year as computed against the 1969 base year. Nothing in Paragraph 36 says that the increase in taxes is to be based on the "last preceding year." We therefore construe the lease to limit tenant's liability for increased taxes to a maximum of $7,500 over the fifteen-year renewal period of the lease.

*Toll* v. *The Great Atlantic and Pacific Tea Co.*, Court of Common Pleas of Montgomery County, Pa., *petition for appeal denied*, Supreme Court of Pennsylvania, Eastern District, October 1974, and *Futura Corporation* v. *The Great Atlantic and Pacific Tea Co.*, Super.Ct. of N.J., Appellate Div., February 15, 1967, are two unreported cases which involve the construction of language identical to that found in Paragraph 36 of the lease in the instant case. Both of these decisions support our construction of Paragraph 36. However, here there is an additional provision for cooperation by the landlord if the tenant decides to contest the amount of taxes levied. We are not persuaded that this final sentence in the paragraph changes the plain and unambiguous meaning of the language used to fix the tenant's liability for increased taxes on the property.

For the reasons stated, the judgment of the court below is reversed, and final judgment is here entered in accordance with this opinion.

*Reversed and final judgment.*