JOHN J. DUANE REALTY CORPORATION *vs.* THE GREAT ATLANTIC & PACIFIC TEA COMPANY. September 13, 1979. John J. Duane Realty Corporation (Duane) leased a parcel of real estate to The Great Atlantic & Pacific Tea Company (A & P) for a term of ten years commencing September 1, 1959, with a provision for three five-year extensions at the option of the lessee, two of which had been exercised when this

action was brought. The lease contains a tax escalation clause, applicable only during the extension terms of the lease, which provides that the rental reserved on the extension privileges is based in part on an estimated real estate tax of $10,000 per annum and that "[i]n the event the real estate taxes ... vary upward or downward, then the monthly rental ... shall be increased or decreased by one-twelfth (1/12) of the amount of such excess, but in no event to exceed $4320 annually." During the extension periods, A & P, in addition to the rent stated in the lease, paid in each year the sum of $4,320, since in each year the taxes upon the property exceeded $10,000 by more than $4,320. For the first year of the first extension, the real estate taxes were $30,333.84. Duane's action for declaratory relief (G. L. c. 231A) resulted in a judgment declaring that the tax escalation clause was to be interpreted as cumulative, entitling Duane to increase the rent by a further $4,320 each year. The judge found that the tax clause was based on a mutual mistake of both parties in that the taxes in 1969 were $30,333.84 and not $10,000, as both parties had assumed.

1. A & P contends that the language "but in no event to exceed $4320 annually" cannot be tortured to mean that its potential additional liability is not more than $4,320 in one year, $8,640 the next, $12,960 the next, and so on to the end of the term. We agree. Compare *Great Atl. & Pac. Tea Co.* v. *Scully*, 216 Va. 536 (1976); *Bensons Plaza* v. *Great Atl. & Pac. Tea Co.,* 44 N.Y.2d 791 (1978). The words are clear and unambiguous, and are to be construed in accordance with their ordinary and usual meaning. *Ober* v. *National Cas. Co.*, 318 Mass. 27, 30 (1945). *Beal* v. *Stimpson Terminal Co.*, 1 Mass. App. Ct. 656, 659 (1974). *Fried* v. *Fried*, 5 Mass. App. Ct. 660, 663 (1977). "Annually" means "reckoned by the year" (Webster's Third New Intl. Dictionary 88 [1971]) and was used in the tax clause to distinguish the ceiling on the potential rent increase (which relates to annual taxes) from the "monthly" references earlier in the clause (which refer to rent that is due and payable monthly). Nothing in the tax clause indicates that the increase in taxes is to be based on "the last preceding year," and clauses which limit the lessee's exposure to increased payments "in any one year" are distinguishable. *Oceantown Realty Corp.* v. *Great Atl. & Pac. Tea Co.*, 54 Misc. 2d 502, 503-504 (N.Y. Long Beach City Ct. 1967). *Westbury Post Ave. Associates* v. *Great Atl. & Pac. Tea Co.*, 46 App. Div. 2d 860 (1974), aff'd 38 N.Y.2d 890 (1976). The language of the lease indicates that in 1959 the parties understood and intended that A & P would pay a certain rental for a ten-year period with three five-year options of extension, that the taxes might increase, that Duane would bear the risk of any tax increase during the initial ten-year term, that A & P would bear the risk of a tax increase during the extension periods, if any, and that A & P's risk would be limited to a specified amount above the anticipated base of $10,000. In construing the clause to be noncumulative, we have been guided by "[j]ustice, common sense and the probable intention of the parties." *Stop & Shop, Inc.* v. *Ganem*, 347 Mass. 697, 701 (1964). That, as a result of this construction, Duane receives less rent than it pays in taxes does

not mean that we have not sought to avoid an unreasonable and inequitable construction and an absurd result. *New England Foundation Co.* v. *Commonwealth,* 327 Mass. 587, 596 (1951). We cannot aid Duane on the basis that it was unskillful in the use of language and did not express what it meant (*Dascomb* v. *Sartell,* 1 Allen 281, 282 [1861]), especially where its attorney had an equal hand in the drafting of the lease along with A & P's agent. We cannot speculate as to what agreement the parties would have made if they had foreseen the increase in taxes which has occurred. See *Welch* v. *Phillips,* 224 Mass. 267, 268-269 (1916). Contrast *Gold Metal Stamp Co.* v. *Carver,* 359 Mass. 681 (1971) (unforeseen additional tax burden created by the unilateral act of the lessor).

2. The finding that the tax clause was based on a mutual mistake was erroneous. The parties' assumption as to the anticipated tax increase was necessarily an approximation. "To justify rescission of a contract for a mutual mistake of fact, the mistake must be about a matter of fact, capable of ascertainment, and not a mere expectation." *Cook* v. *Kelley,* 352 Mass. 628, 632 (1967). There is no mistake where, as here, one of the parties is disappointed that its expectation as to future events proved to be erroneous. 13 Williston, Contracts § 1543 (3d ed. 1970). Restatement (Second) of Contracts § 293, Comment (Tent. Draft No. 10, 1975).

The judgment is reversed, and the case is remanded to the Superior Court for the entry of a judgment for declaratory relief not inconsistent with this opinion.

*So ordered.*

*Joel Z. Eigerman* for the defendant.
*Thomas F. Williams* for the plaintiff.