STEPHEN M. RICHMOND, special administrator, *vs.*
JANET W. WOHLBERG, administratrix.

Norfolk. November 2, 1981. — February 17, 1982.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Will,* Compromise. *Contract,* Compromise of will. *Executor and Administrator,* Status in proceedings involving estate.

An administratrix with the will annexed, who was appointed after a compromise agreement was reached among claimants to the estate, had standing to challenge the validity of the agreement by raising the possibility of its illegality or its being contrary to public policy, but was not entitled to challenge the compromise on the ground that the minor trust beneficiaries, represented in the later proceeding by a guardian ad litem, had not participated in the settlement. [295-296]

A fee arrangement between an attorney acting as a special administrator of an estate and his law firm to perform legal services for the estate, which was made an integral part of the settlement of a will contest, was proper in the absence of special circumstances or flagrant misconduct. [296-297]

An agreement not to contest the fee for legal services paid to the law firm of the special administrator of an estate which was reached in connection with a will compromise and which was brought to the attention of a probate judge when the compromise was submitted to him did not impermissibly shield the administrator's accounts from judicial review. [297-298]

In the circumstances, the conduct of a special administrator of an estate, an attorney, in negotiating assent to his expenses for counsel fees to be paid to his law firm as part of a will compromise did not amount to coercion or to overreaching sufficient to vitiate the agreement of the parties. [298-299]

An award of slightly over $6,500 to a special administrator as fees and expenses incurred in defending his account was proper as an expense of administration, and was in the discretion of the judge to award under G. L. c. 215, § 45. [299]

PETITION for probate of a will filed in the Probate Court for the county of Norfolk on December 27, 1973.

Proceedings relating to a special administrator's account, filed on October 7, 1977, were heard by *Hoffman*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Edward R. Lev* for the defendant.

*Robert W. Meserve* (*Eric F. Menoyo* with him) for the plaintiff.

HENNESSEY, C.J. This appeal concerns the extent to which an agreement reached in connection with a will compromise is binding upon an administratrix with the will annexed who was appointed after the agreement of compromise was completed. We conclude that, in the circumstances of this case, the agreement is binding on the administratrix with the will annexed, and bars her objections to an account filed by a special administrator.

Ronnie W. Brooker died in December, 1973, leaving an estate valued at $122,321.02. In her will, she left $25,000 in trust to a nephew and two nieces, the minor children of a deceased brother. If none of the children survived to the time set for distribution of the principal, the trustee was to pay the principal to Allie Scruggs, a friend, and in the event of his prior decease to the testatrix's heirs at law. The only other bequests were a gift of jewelry (valued at $1,000) to the two nieces mentioned in the trust, and a gift of the remainder of the estate to Scruggs. Stephen Richmond, an attorney and a partner in the law firm of Kaye & Fialkow, was named executor and trustee. Richmond petitioned for probate of the will, and was appointed special administrator.

Arthur and Lee Wasserman, two brothers of the testatrix who had not been mentioned in the will, objected to its allowance on the ground that their sister had lacked testamentary capacity. Richmond retained his law firm, Kaye & Fialkow, to represent him and defend the will in the ensuing contest. Scruggs, also represented by counsel, joined in the defense of the will. The minor trust beneficiaries were not represented, and no guardian ad litem was appointed to protect their interests.

After several days of trial, the parties to the will contest agreed to settle their claims to the estate by compromise agreement. Negotiations followed, some taking place in the chambers of Judge Robert Ford, the judge presiding over the will contest. At length the parties agreed, subject to the approval of the court, that (1) the Wasserman brothers, rather than Scruggs, would take the trust principal if none of the minor beneficiaries survived to the time set for distribution; (2) Scruggs would receive certain real estate and a sum of money; (3) the Wasserman brothers would take the remainder of the estate; and (4) Janet Wohlberg, daughter of one of the Wassermans, would replace Richmond as trustee and representative of the estate.

During the settlement negotiations, Richmond took the position that he would not accept the compromise unless it included an agreement concerning his counsel's fees. He proposed a figure of $35,000 and after some discussion the parties agreed that the estate would pay without contest $28,000 in fees, plus disbursements. This oral agreement was later memorialized in a letter written by Richmond's counsel.

The parties submitted their compromise to Judge Ford for approval. The fee agreement was not incorporated in the written compromise agreement, but was reported to the judge. Judge Ford approved the compromise agreement, and appointed Wohlberg administratrix with the will annexed to administer the estate in accordance with the compromise.

Subsequently, Richmond filed his fourth and final account as special administrator, which reflected a payment of $28,726.80 to Kaye & Fialkow for fees and disbursements. Wohlberg and Arthur Wasserman filed timely objections, and a hearing was held before a second Probate Court judge. The judge limited the issues to the validity and effect of the fee agreement, reserving all questions of the reasonableness and propriety of the fees for a second hearing, to be held if he found that the agreement was not controlling. To protect the interests of the minor trust ben-

eficiaries, the judge appointed a guardian ad litem. The guardian ad litem filed a report, in which he stated that he would ordinarily assent to the account, but felt compelled to "qualify" his assent in light of the outstanding objections. He added that he did not "take any position relative to these objections, particularly as the rights of the beneficiaries of the trust have not been adversely affected."

After hearing the testimony of Richmond, his counsel, the Wassermans' counsel and Judge Ford, the second judge found that the fee agreement was "an integral part of the settlement" of the will contest, that the parties had reported it to Judge Ford "in conjunction with the presentation of the compromise," and that it "did not affect the ability of the estate to fund [the] trust." He concluded that the fee agreement was enforceable and was binding on Wohlberg as administratrix with the will annexed, and entered judgment allowing Richmond's account. On Richmond's motion, the judge also allowed Richmond counsel fees and expenses incurred in the defense of his account, to be paid by Wohlberg as administratrix.

Wohlberg appealed both the allowance of Richmond's account, and the award of fees and expenses in defense of the account.[1] Richmond cross appealed, claiming that the fee award should have been larger. We transferred the case to this court on our own motion.

---

[1] Wohlberg also appealed the judge's denial of her motion for "additional findings of fact," filed after the hearing but before the judge entered his findings of fact and conclusions of law. In her motion, Wohlberg had asked the judge to find that after payment of Richmond's counsel fees and other expenses of administration, the estate would be without sufficient funds to establish the trust as called for in the will and pay the accrued income to the beneficiaries. In support of this contention, Wohlberg submitted her first account as administratrix with the will annexed. The judge properly denied Wohlberg's motion. Wohlberg's account was not before the judge at the time of the hearing, and it was within his discretion to deny what was in effect a request for consideration of new evidence. There was competent evidence to corroborate the statement of the guardian ad litem, quoted in the text, that the will compromise did not affect the interests of the trust beneficiaries.

Wohlberg's central complaint is that the arrangement for legal services between Richmond, as special administrator, and his own law firm, was improper and resulted in an excessive charge against the estate for counsel fees. She contends that the agreement among the parties to the will contest, authorizing Richmond to pay the fees, is unenforceable as a matter of policy. In addition, Wohlberg objects to the agreement on the ground that the minor trust beneficiaries were necessary parties to the compromise, and were not represented in the compromise negotiations.

We begin with a statement of general principles. The challenged item in Richmond's account — $28,000 plus disbursements, paid to Richmond's law firm as fees for representing the estate — was authorized by an agreement, which, according to the unchallenged findings of the judge below, was an integral part of a will compromise. Parties to a dispute over the distribution of an estate may settle their differences in two ways. First, the executor may petition the court for leave to compromise the dispute (Richmond did this in the present case). The procedure is statutory. G. L. c. 204, §§ 15-18. The compromise agreement must be signed by the executors or petitioners for administration, all persons "claiming as devisees or legatees whose interests will in the opinion of the court be affected," and all persons who have appeared to claim intestate shares. G. L. c. 204, § 15. *Mulligan* v. *McDonagh,* 307 Mass. 464, 466-467 (1940). Any minor who is a necessary signator must be represented by a guardian or guardian ad litem, G. L. c. 204, § 18, and the court must appoint a guardian ad litem to protect contingent future interests affected by the compromise, G. L. c. 204, § 16. If the court approves the compromise as fair and reasonable, it is binding on all parties interested in the estate. G. L. c. 204, § 17. Strict compliance with the statutory requirements is necessary to support the "jurisdiction" of the supervising court. *Ellis* v. *Hunt,* 228 Mass. 39, 43 (1917). See *Colantuono* v. *Colantuono,* 356 Mass. 721 (1969). Alternatively, parties who are competent and of age may settle their claims without the

aid of the statute, simply by mutual agreement. *Mulligan* v. *McDonagh, supra* at 467-468. *Ellis* v. *Hunt, supra* at 44. *Baxter* v. *Treasurer & Receiver Gen.,* 209 Mass. 459, 463 (1911).

A valid compromise is binding upon the executor or administrator of the estate. 1 G. Newhall, Settlement of Estates § 45, at 160 (4th ed. 1958). This principle necessarily applies to a subsequently appointed executor or administrator; otherwise, the succession of a new fiduciary would automatically negate agreements fairly reached among affected parties. Further, the principle is reinforced in the present case by the fact that Wohlberg was nominated as administratrix by the agreement itself, and was appointed by Judge Ford with directions to administer the estate in accordance with the compromise agreement.

Thus, the question we must decide is whether the compromise and accompanying fee agreement are valid; if they are, Wohlberg is obligated to pay the fees without further contest. The reasonableness and propriety of the fee arrangement between Richmond and his law firm are not before us, except in so far as they may affect the validity of the agreement.

Richmond contends that Wohlberg lacks standing to challenge even the validity of the agreement.[2] We disagree; Wohlberg, as the person who must carry out the agreement, should be able to raise the possibility that it is illegal or contrary to public policy. Cf. *Budin* v. *Levy,* 343 Mass. 644, 648 (1962). On the other hand, she should not be able to challenge the compromise and fee agreement on the ground that the minor trust beneficiaries did not participate in the settlement. As we stated earlier, an agreement reached by parties who are competent and of age does not depend upon the statute for its validity; therefore, we need not consider

---

[2] Richmond concedes that the fee agreement was not part of the written compromise actually approved by the court, and does not argue that it was incorporated into the court's decree. Therefore, we set aside possible questions of collateral estoppel, and treat the fee agreement as a simple agreement rather than a judgment.

whether a subsequently appointed executor or administrator might raise third-party rights as defects in a statutory compromise. A nonstatutory compromise does not, of course, bind minors and unascertained persons who were not represented in settlement negotiations and whose interests are affected. See *Abbott* v. *Gaskins,* 181 Mass. 501, 506 (1902). But it does not follow that the administratrix should be permitted to avoid the agreement by asserting their rights, at least when, as here, the minors are represented in the later proceeding by a guardian ad litem. See *Barden* v. *Flannery,* 256 Mass. 140, 141 (1926); *Elder* v. *Adams,* 180 Mass. 303, 306 (1902). See also *Turner* v. *Morson,* 316 Mass. 678, 688-689 (1944). In the absence of any objection from the guardian ad litem, we will not disturb the settlement on the basis of its possible effect on the minor beneficiaries.[3]

We turn to Wohlberg's argument that the fee agreement is unenforceable as a matter of policy. This contention appears to have three branches: first, that the fee arrangement between Richmond and his firm involved such a serious conflict of interest that the agreement sanctioning it must be held void; second, that the agreement impermissibly shields a fiduciary's accounts from judicial review; and third, that Richmond's demands in the course of negotiation were "coercive," and constituted overreaching.

We see no impropriety in the arrangement between Richmond and his law firm that would justify our holding void the compromise and fee agreement. Wohlberg conceded at oral argument that it is not per se improper for a lawyer acting as a special administrator to retain his law firm to perform legal services for the estate he represents. See *Chase* v. *Pevear,* 383 Mass. 350, 360 (1981).[4] Instead, she relies on

---

[3] We do not imply that the guardian ad litem's failure to object would bar a challenge by the trust beneficiaries. See *Denholm* v. *McKay,* 148 Mass. 434, 442-443 (1889).

[4] In *Chase* v. *Pevear,* 383 Mass. 350, 360 (1981), we considered a trustee's employment of a firm in which he was interested as an investment advisor, and stated that "[a]s to the amount of the trustee's fee, it is of course obvious that there is a direct and total conflict of pecuniary interest

the specific circumstances of this case, and contends that Richmond involved himself in an impermissible conflict of interest when, "foreseeing a protracted will contest, he retained his own law firm to represent him in that litigation, despite the presence of other active proponents of the will," and incurred legal expenses totalling over 28% of the value of the estate. However, even if we accepted the proposition that Richmond's conduct amounted to a breach of trust (and we express no opinion on this question), it would not follow that the agreement sanctioning it was unenforceable. A fiduciary's transactions and accounts will usually be upheld when the beneficiaries have assented after disclosure, even though the transactions may have involved a breach of trust, or the amounts shown in the accounts may be excessive. See *Swift* v. *Hiscock*, 344 Mass. 691, 693 (1962); *Lipsitt* v. *Sweeney*, 317 Mass. 706, 713 (1945); *Colburn* v. *Hodgdon*, 241 Mass. 183, 191 (1922). Only in rare cases have we held void a contract involving a breach of trust, and the breach has generally been compounded by other circumstances. See *Whitney* v. *Whitney*, 317 Mass. 253 (1944) (no consideration and trust defeated); *Taylor* v. *Trefrey*, 282 Mass. 555 (1933) (no consideration); *Ball* v. *Hopkins*, 268 Mass. 260 (1929) (inadequate disclosure). The present case involves no special circumstances, or flagrant misconduct, that might warrant our disturbing the agreement.

We also reject Wohlberg's argument that the agreement is unenforceable because it precludes judicial scrutiny of the arrangement between Richmond and his firm and of the reasonableness of the fees. It is true that we have emphasized the need for "the most careful scrutiny" when a lawyer acting as fiduciary employs himself (or his firm) to perform legal services for his trust. *Blake* v. *Pegram*, 109 Mass. 541, 553-554 (1872). The parties' agreement not to contest Rich-

between trustee and beneficiary; that conflict is inevitable and is in no way improper." Wohlberg conceded that our statements in *Chase* preclude any argument for a per se prohibition against a fiduciary's retention of a firm in which he is interested.

mond's fee expenses, however, did not curtail judicial review. The fee agreement was brought to judicial attention when the parties submitted their compromise to Judge Ford, who could have withheld his approval of the compromise if he felt that the process of negotiation or the fee agreement itself was unfair. Cf. *Swift* v. *Hiscock, supra* at 693; *New England Trust Co.* v. *Triggs,* 334 Mass. 324, 342 (1956).

Finally, we do not believe that Richmond's conduct in negotiating assent to his expenses for counsel fees as part of a will compromise amounted to "coercion," or to overreaching sufficient to vitiate the agreement of the parties. We recognize the sensitivity of a situation in which a fiduciary holds the necessity of his assent to a settlement as a bargaining tool, and uses it to elicit assent to his accounts. Perhaps if an administrator in Richmond's position insisted upon a blanket assent to forthcoming accounts or to other matters irrelevant to the contest at hand, he would be guilty of overreaching, and the parties' assent would be ineffective. But here Richmond sought assent to counsel fees incurred in administration and defense of the will — specific expenses related to the dispute under negotiation. The amount of the fees was fully disclosed, and there is no suggestion that Richmond concealed his partnership in Kaye & Fialkow. See *Colburn* v. *Hodgdon, supra* at 191. See also *Jackson* v. *United States Trust Co.,* 361 Mass. 333, 338 (1972); *Bowker* v. *Pierce,* 130 Mass. 262, 262-263 (1881). Richmond did not generate the need for legal expenses; the catalyst was the claim of the Wasserman brothers that the will was invalid. Richmond was entitled to spend money in defense of the will, see *Paone* v. *Gerrig,* 362 Mass. 757, 763 (1973), and in fact agreed to a reduction from his initial fee estimate. He may well have reasoned that a moratorium on litigation was in the best interests of the estate. Moreover, negotiations took place with the knowledge of the Probate Court judge, and all parties were represented by counsel. Although the parties have raised arguments that might, in another context, impugn the integrity of the probate process and the

ethics of attorneys, these concerns are not at stake in the special circumstances of this case.

One issue remains. Richmond claimed nearly $13,000 to be paid by the estate, as fees and expenses incurred in defending his account. The judge allowed him slightly over $6,500, to which both parties object. We affirm the judge's award. The claim was proper, as an expense of administration, see *Berkshire Trust Co.* v. *Booth,* 317 Mass. 331, 335 (1944), and the amount was in the discretion of the judge to award, "as justice and equity . . . require[d]." G. L. c. 215, § 45.

In sum, we affirm the decision of the Probate Court judge that the fee agreement reached as an integral part of the compromise of Ronnie W. Brooker's will was valid, and prevents Wohlberg from challenging the charge for counsel fees in Richmond's accounts. We also affirm the judge's allowance of counsel fees and expenses incurred by Richmond in defense of his account.

*So ordered.*