Welsh, P.J.
This is an action in which the plaintiffs seek to recover $21,000.00 for breach of a written contract, regarding the purchase of a parcel of land by the defendant from the plaintiffs, for the purpose of constructing and operating a Burger King Restaurant.
The defendant admitted entering into the written contract, but denied committing any breach.
The court allowed the plaintiffs’ motion for summary judgment, and judgment was entered awarding the plaintiffs $21,000.00 plus interest and costs. The defendant requested and obtained a report to the Appellate Division of the court’s action on the motion.
We conclude there was no error and order the report to be dismissed.
The pleadings, admissions and other material considered by the motion judge yield the following undisputed facts:
On or about April 22,1976, the parties to this action entered into a written agreement whereby the defendant undertook to purchase a lot of land near the intersection of North Main Street and Diauto Drive in Randolph to build and operate a Burger King Restaurant. During the negotiation phase, plaintiffs had represented they could obtain the necessary approvals from the Town of Randolph for an opening and driveway into the premises from *96 North Main Street. However, it became apparent that the plaintiffs had been unable to secure such approval as the time for execution of the agreement approached. Accordingly, the parties agreed to reduce the purchase price of the premises in an amount equal to $21,000.00. This $21,000.00 was to be paid by the defendant (buyer) to the plaintiffs (seller) on the occurrence of either of the following events:
1. The obtaining of approval for the opening and driveway within one year of the date of opening of the restaurant, or
2. Gross sales of the restaurant during any one of its first five years of operation exceeding $850,000.00.
The restaurant opened on September 22, 1976. It is undisputed that the approval of the access driveway for the North Main Street access was not obtained during the first year of operation of the restaurant. The first two years of operation did not produce gross sales in excess of $850,000.00. In the third year of operation, gross sales exceeded $850,000.00 by over $31,000.00. In the fourth and fifth years, sales exceeded the $850,000.00 mark by even wider margins.
The defendant doesn’t quarrel with any of these fácts. It asserts that because of inflation during the third year of operation, the defendant was forced to raise prices, and that consequently the gross sales during the 3rd, 4th and 5th years of operation were inflated. There is a genuine issue of material fact, argues the defendant, because at trial it would offer evidence that tends to show what the parties really intended was that the $21,000.00 was to be paid if the restaurant reached a certain profit margin (i.e. that gross profits were really intended only as a measure of net profits). Therefore, as the argument goes, since the expected profit margin was not realized, the conditions precedent was not met and the money was not due.
This contention borders on the frivolous.
1. There is no genuine issue of material fact. The moving parties have sustained their burden of showing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Community National Bank v. Dawes, 369 Mass. 550, 554 (1976). In the light of unambiguous language in the contract, the defendant seeks to set up, in effect, that his own expectations as to the benefits of the contract were not achieved due to unanticipated rise in inflation. We conclude that the judge correctly determined that there are no genuine issues of material fact and that the plaintiff is entitled to judgment as a matter of law. Coveney v. President & Trustees of the College of the Holy Cross, 388 Mass. 16, 19, (1983).
2. The defendant gratuitously asserts in his brief that underlying the method of measurement adopted by the parties was a presumption that the dollar would, for the five year period in issue, maintain a constant value. The short answer to this is the usual rule that one who, in the absence of fraud, signs a contract is bound by its terms whether or not he reads or understands them. Canney v. New England Telephone & Telegraph Co., 353 Mass. 158, 165 (1967).
There is no mistake such as will excuse a party where one party is disappointed that its expectations as to future events proved erroneous. John J. Duane Realty Corp. v. The Great Atlantic & Pacific Tea Co., 8 Mass. App. Ct. 899, 901 (1979). A mere misunderstanding by one of the parties does not establish the kind of mistake that will excuse that party. Mechaber v. Pittle, 270 Mass. 193, 197 (1930).
“Where parties, intending to contract, sign a written agreement in language adopted by them, the words of the writing, in the meaning given them by the law, constitute the contract on which their minds have met,” Id. at 198.
*97 Avoidance of a contract on the grounds of mutual mistake is not permitted merely because one party is disappointed in the hope that the facts accord with his wishes. Covich v. Chambers, 8 Mass. App. Ct. 740, 750 (1979). The purchasing power of money at some future date is a classical example of disappointed expectations of a party that will not afford a basis in law for avoiding a contract on the grounds of mistake. The risk of fluctuations in the value of currency is borne by both parties, unless by apt language such risk is otherwise distributed. See Essex Co. v. Pacific Mills, 96 Mass. 389, 398 (1867).
A contrary rule would introduce an unacceptable level of uncertainty into commercial dealings and would seriously errode the protection afforded contracts by law. In a similar vein, parties are presumed to have entered into their contracts with an implicit recognition of the power of the government over the currency. Legal Tender Cases, 80 U.S. 457 (1870). In some ways, a contract for the payment of a sum of money can be compared to a contract for the future sale of a commodity where the risk of loss as to the future worth of such commodity must be deemed to fall upon whichever party such future conditions disfavor.
There being no error, it is ordered that the report be dismissed.

So ordered.