MAYNARD ROSS, executor, & another[1] vs. GLORIA LEE
FRIEDMAN & others.[2]

Essex. April 17, 1986. — July 15, 1986.

Present: KASS, KAPLAN, & WARNER, JJ.

*Probate Court*, Jurisdiction. *Will*, Compromise. *Executor and Adminis-
trator*, Compromise agreement. *Contract*, Compromise of will, Mistake.
*Jurisdiction*, Specific performance.

A Probate Court which had allowed a decedent's will and authorized an
agreement for the compromise of three individuals' claims to her estate
had jurisdiction over an action seeking specific performance by two of
them of their obligation to transfer shares of stock in a closely held
corporation pursuant to buy out provisions in the agreement, even though
the stock itself had not been a part of the decedent's estate. [515-516]
A Probate Court decree which allowed a decedent's will and authorized an
agreement for the compromise of claims to her estate, and which included
a finding that the agreement was "just and reasonable," was binding
upon the parties and was not subject to collateral attack by defendants
in an action for specific performance of the agreement. [516-517]

CIVIL ACTION commenced in the Essex Division of the Pro-
bate and Family Court Department on May 7, 1985.

A motion for summary judgment was heard by *Edward J.
Rockett*, J.

*Gerald A. Rosenthal* for the defendants.

*Kevin T. Daly* for the plaintiffs.

WARNER, J.  When the instrument purporting to be the last
will of Bertha Freedman was presented for probate by the
named executor (Maynard Ross), the decedent's daughters,
Gloria and Sybil, recoiled. Except for legacies of $500 each
to Gloria and Sybil, this instrument left the decedent's entire

---

[1] Lillian Ross.

[2] Sybil Swartz and the Marshall Corporation.

estate (estimated to have a value of about $55,000) to their sister Lillian (the wife of Maynard). An earlier purported will had divided the decedent's estate in equal shares among the three daughters. There followed objections by Gloria and Sybil to the allowance of the offered instrument and an agreement of compromise. See G. L. c. 204, § 15.

The sequence of events which led to the present action is undisputed. The compromise agreement provided that Lillian would take, after expenses of administration, one-half of the estate and that Gloria and Sybil would each receive one-quarter. In addition, because of the friction between Lillian and Gloria and Sybil, they decided, as a part of the compromise, to provide for a buy out by one of the factions of the shares (which they had inherited from their father) held by the other in a closely held corporation, called the Marshall Corporation. Option provisions were inserted in the agreement to accomplish that purpose. Each of the sisters owned shares of the stock representing a one-ninth interest in the corporation. The compromise agreement established a value for those shares based upon the value of the corporation which, in turn, was based upon the value of its only asset, a parcel of real estate. That value ($7,000 for each one-ninth interest) was determined by reference to an offer for the purchase of the real estate, made shortly before the execution of the compromise agreement, in the amount of $60,000 (rounded by the parties to $63,000 to provide for easy division by nine). Each of the parties was legally competent, acted in good faith and was represented by counsel in connection with the will contest and agreement of compromise.

The will and compromise agreement were then presented without objection to the Probate Court. A judge entered a decree authorizing the executor to compromise the controversy in accordance with the agreement, expressly finding that the agreement was "just and reasonable."[3] G. L. c. 204, § 17. A second decree was entered allowing the will and directing the

---

[3] The record appendix does not contain a copy of this decree, but its existence is disclosed by an examination of the original papers in the proceedings for the probate of the will. See Mass.R.A.P. 18(a), as amended, 392 Mass. 1106 (1984).

administration of the estate under the terms of the will and the compromise agreement. In the agreement, each party waived her right of appeal, and no action has been brought to modify or vacate the decrees. Thereafter, Lillian timely and properly exercised her option under the agreement to purchase the shares of stock of the Marshall Corporation owned by Gloria and Sybil. Gloria and Sybil refused to deliver their shares to Lillian. The executor[4] and Lillian then brought this separate action in equity in the Probate Court for specific performance of the compromise agreement. The defendants answered, claiming, among other things, that there had been a mistake as to the value of the stock of the Marshall Corporation and that the Probate Court was without jurisdiction to grant specific performance.

In an affidavit filed in response to the plaintiffs' motion for summary judgment, Gloria expanded on the defendants' claim of mistake. She said that several months after the parties entered into the compromise agreement, the Marshall Corporation received a much higher offer for its real estate and that the property was later sold for $170,000. This, the defendants contend, shows that the parties acted on a mutual mistake as to the value of the land, relying on the precompromise agreement offer to purchase for $60,000.[5] The plaintiffs' motion for summary judgment was allowed.[6]

1. Contrary to the defendants' assertion, the Probate Court is a court of general and superior jurisdiction. G. L. c. 215, § 2. See *Farquhar* v. *New England Trust Co.*, 261 Mass. 209, 212 (1927); *Superintendent of Belchertown State Sch.* v. *Saikewicz*, 373 Mass. 728, 755 (1977). There can be no ques-

---

[4] The executor was not a party to the compromise agreement; he should have been. See G. L. c. 204, § 15. He did bring the petition for authority to compromise. Since Lillian is a plaintiff in this action, the defendants make no issue on appeal as to the standing of the executor.

[5] There is no suggestion that this was not a bona fide arm's-length offer.

[6] The docket does not show the entry of a judgment, as is required by Mass.R.Civ.P. 58(a), as amended, 371 Mass. 908 (1977). We treat the order granting the motion for summary judgment as appealable. See *Lewis* v. *Emerson*, 391 Mass. 517, 519-520 (1984); *Swampscott Educ. Assn.* v. *Swampscott*, 391 Mass. 864, 865-866 (1984).

tion that the court has subject matter jurisdiction of this action under the provisions of G. L. c. 215, § 6.[7] See *Lomasney* v. *Prendible*, 299 Mass. 273, 275 (1938). There is nothing in the defendants' contention that the court lacked jurisdiction in equity because the plaintiffs had an adequate remedy at law for damages for breach of contract. It has long been held that compromise agreements are specifically enforceable. See *Blount* v. *Wheeler*, 199 Mass. 330, 338-339 (1908); *Mac-Donald* v. *Gough*, 327 Mass. 739, 742-743 (1951), and cases cited.

The defendants argue that a different rule should apply in the circumstances because the plaintiffs seek specific performance of provisions of the compromise agreement which relate to property which was not part of the decedent's estate; the shares of stock of the Marshall Corporation are owned by the sisters by way of inheritance from their father. The argument ignores that the buy out provisions are integral parts of the agreement. So far as we know (and we may assume) Lillian's agreement to surrender one half of her share (substantially all of the decedent's estate) under the purported will, and the agreement of Gloria and Sybil to accept that share, would not have been made without the buy out agreement. Indeed, in her affidavit Gloria says that the parties felt "it would be best to resolve all matters together." Cf. *Richmond* v. *Wohlberg*, 385 Mass. 290, 294 (1982).

2. We hold that the defendants' attempts to avoid specific performance of the compromise agreement in this action constitute an impermissible collateral attack on the Probate Court decrees authorizing the compromise agreement and allowing the will. The parties invoked the power of the Probate Court to approve the compromise agreement by a specific decree. See G. L. c. 204, § 15; *Richmond* v. *Wohlberg, supra* at 294-295. That decree (which included a finding that the agreement

---

[7] Although because of the Probate Court decrees the question is not presented in this case, we note that specific performance may be granted of an agreement for the sale of stock in a closely held corporation. See *Legro* v. *Kelley*, 311 Mass. 674, 676 (1942). The Probate Court would have common law equity jurisdiction to grant such relief. G. L. c. 215, § 6, first par.

was "just and reasonable") and the decree allowing the will are binding on the defendants absent modification or vacation and may not be attacked collaterally. G. L. c. 204, § 17. *Newburyport Soc. for Relief of Aged Women* v. *President & Fellows of Harvard College*, 310 Mass. 438, 442-443 (1941). *Beede* v. *Old Colony Trust Co.*, 321 Mass. 115, 121 (1947). See *Farquhar* v. *New England Trust Co.*, 261 Mass. at 212-214.

The order of the Probate Court granting the plaintiffs' motion for summary judgment is affirmed. A judgment is to enter for the plaintiff Lillian Ross granting specific performance of the compromise agreement in the respects requested.[8]

*So ordered.*

---

[8] Although we need not decide the question, we think that the defendants did not make out any genuine issue of material fact and that as matter of law there was no such mistake of fact as would justify rescission or reformation of the compromise agreement as a contract. "Our cases . . . [on mutual mistake] are substantially in accord with the articulation made in Restatement (Second) of Contracts § 152 (1979)." *Maloney* v. *Sargisson*, 18 Mass. App. Ct. 341, 345 (1984). As noted, there is nothing in the record which suggests that the offer on which the parties based the stock valuation was not bona fide and arm's length. None of the parties was under any disability, and each was represented by counsel. There is no allegation of fraud or misrepresentation. The mere fact that several months after the execution of the agreement a higher offer was made for the real estate of the corporation is not sufficient to support rescission or reformation on the basis of mutual mistake. "Practically never is [a mistake as to value] such a mistake as will justify rescission. The parties are conscious of the uncertainty of value. Value is one of the principal subjects of agreement. Each party is consciously assuming the risk of error of judgment. As to this, by business custom, by prevailing mores, by social policy, and by existing law, the rule is caveat emptor. It is also, and in equal degree, caveat vendor" (footnote omitted). 3 Corbin, Contracts § 605 (1960). See *Manganiello* v. *Caggiano*, 338 Mass. 542 (1959); Restatement (Second) of Contracts § 151 comment a & illustration 2, § 152 (1981); Farnsworth, Contracts §§ 9.2, 9.3 (1982). Cf. *Aldrich* v. *Travelers Ins. Co.*, 317 Mass. 86 (1944); *Cook* v. *Kelley*, 352 Mass. 628 (1967); *Covich* v. *Chambers*, 8 Mass. App. Ct. 740 (1979); *John J. Duane Realty Corp.* v. *Great Atl. & Pac. Tea Co.*, 8 Mass. App. Ct. 899 (1979); *Maloney* v. *Sargisson, supra.* Contrast *Long* v. *Athol*, 196 Mass. 497 (1907); *Dover Pool & Racquet Club, Inc.* v. *Brooking*, 366 Mass. 629 (1975); *Berman* v. *Sandler*, 379 Mass. 506 (1980).