HOWARD R. BIGGERS, JR., RENNIE BIGGERS, AND CAROL BIGGERS DABBS v. FELIX A. EVANGELIST AND WIFE PAULA A. EVANGELIST

No. 8326SC1025

(Filed 6 November 1984)

1. **Deeds § 11.2; Vendor and Purchaser § 1— contract for sale of realty—no merger into deed**

   A contract for the sale of realty did not merge into the deed where the contract contained a provision that all covenants, representations, warranties and agreements set forth therein survived the closing date and the execution of the deed; therefore, the sellers were entitled to bring an action on the contract.

2. **Limitation of Actions § 4.6; Seals § 1— contract action—sealed instrument—statute of limitations**

   The ten-year statute of limitations applicable to actions on sealed instruments applied to an action on a contract for the sale of land where the word "seal" appeared in brackets next to the signatures of the parties. G.S. 1-47.

3. **Easements § 4.3; Vendor and Purchaser § 4— contract for sale of realty—right to reserve easements in roads**

A clause in a contract for the sale of realty providing that the property "shall" be conveyed to the buyers free and clear of liens, encumbrances, claims, easements and restrictions except that said property "may" be conveyed subject to rights-of-way in two named roads gave the sellers the power expressly to reserve such rights-of-way in the deed but did not invalidate the sellers' conveyance in the deed of their easements and their "rights and interests" in the two roads or entitle the sellers to seek rights-of-way in the roads after the conveyance.

4. **Attorneys at Law § 3.1; Principal and Agent § 5.2; Vendor and Purchaser § 3— description in deed—authority of attorney to make parol agreement**

Where an attorney had actual authority to negotiate a real estate transaction on behalf of the sellers, the sellers are bound by the attorney's parol agreement, made within the scope of his authority, as to the description of the property to be placed in the deed conveying the property to the buyers even though the parol agreement modified the terms of the written agreement between the parties.

5. **Easements § 5.3— easements by implication—sufficiency of evidence**

Plaintiffs established a right to an implied easement in two roads arising from prior obvious or manifest use for access to and from a retained 3-acre tract and a 1.22-acre tract. However, plaintiffs failed to establish a right to an implied easement in either of the roads for a 26-acre tract or a second 3-acre tract where neither road bordered the 26-acre tract at the time of severance, and where the second 3-acre tract was bordered by a third road.

APPEAL by defendants from *Gaines, Judge.* Judgment entered 21 June 1983 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 8 June 1984.

*Blakeney, Alexander & Machen, by Whiteford S. Blakeney, and Boyle, Alexander, Hord & Smith, by B. Irvin Boyle, for plaintiff appellees.*

*Jones, Hewson & Woolard, by Harry C. Hewson and Hunter M. Jones, for defendant appellants.*

BECTON, Judge.

On 1 December 1980, plaintiffs, Irene R. Biggers* and her children, Howard R. Biggers, Jr., Rennie Biggers, and Carol Biggers Dabbs (the Biggers) sought to reform, on the ground of

---

*Irene R. Biggers' name has been omitted from the caption of the case, but it is clear from the pleadings that she was a party to the action.

mutual mistake, a deed, dated 1 July 1975, from Irene and her husband, Howard R. Biggers, Sr. (since deceased) to the defendants, Felix A. Evangelist and his wife, Paula A. Evangelist, conveying a 9.432 acre tract including the homeplace. The Biggers alleged that the deed mistakenly failed to reserve to the Biggers a right-of-way along the two private access roads, Bent Branch Road and Wild Holly Lane, to reach their remaining property and, in fact, arguably conveyed all their easements and fee title interest in the two roads. Moreover, the deed mistakenly included within its 9.432 acre metes and bounds property description the entire width of Bent Branch Road (60 feet) for a 187.59 foot long section, thereby expressly giving the Evangelists fee title interest in that section of the road.

The Biggers first asked the trial court to grant them a 60-foot wide private right-of-way along the two private roads to reach their remaining undeveloped property. Later the Biggers amended their Complaint by asking the trial court to reconvey fee title interest in one-half the width of Bent Branch Road (30 feet) for the 187.59 foot long section. The Evangelists pleaded N.C. Gen. Stat. Sec. 1-52(9) (1983), the three-year statute of limitations applicable to actions for relief on the grounds of fraud or mistake, in bar. The Biggers then added a second theory of recovery to their Complaint—specific performance of the written contract for purchase and sale of real estate, dated 22 May 1975. They asked the trial court to conform the deed to the contract and for "such other and further relief as the court may deem just and proper."

On 21 June 1983 the trial court, after a bench trial, concluded that the written contract (1) mandated a conveyance subject to rights-of-way of Bent Branch Road and Wild Holly Lane; (2) voided the provisions of the third paragraph of the deed, dealing with the Biggers' easements; and (3) voided the conveyance of fee title to the 30-foot wide strip of Bent Branch Road beyond the centerline. In addition, the trial court concluded that the Biggers were entitled to easements by implication to reach their remaining property and that the three-year statute of limitations, G.S. Sec. 1-52(9) (1983), was inapplicable to an action to enforce a written contract under seal.

The Evangelists appeal. We affirm in part and reverse in part.

I

[1]   Generally, a contract for the sale of land is not enforceable when the deed fulfills all the provisions of the contract, since the executed contract then merges into the deed. *Gerdes v. Shew*, 4 N.C. App. 144, 166 S.E. 2d 519 (1969); 26 C.J.S. *Deeds* Sec. 91(c) (1956). However, it is well-recognized that the intent of the parties controls whether the doctrine of merger should apply. *Stewart v. Phillips*, 154 Ga. App. 379, 268 S.E. 2d 427 (1980) (survival clause — no merger); *Bryant v. Turner*, 150 Ga. App. 65, 256 S.E. 2d 667 (1979) (closing statement revealed intent not to merge); *Vaughey v. Thompson*, 95 Ariz. 139, 387 P. 2d 1019 (1963), 8A G. W. Thompson, *Real Property* Sec. 4458 (1963 & Supp. 1981); Annot., 38 A.L.R. 2d 1310 (1953). Although we find no North Carolina case directly on point, the intent of the parties is the guideline in contract interpretation, *Lane v. Scarborough*, 284 N.C. 407, 200 S.E. 2d 622 (1973), and the statutorily mandated guideline in deed construction. N.C. Gen. Stat. Sec. 39-1.1 (1976); *Whetsell v. Jernigan*, 291 N.C. 128, 229 S.E. 2d 183 (1976). Moreover, the intent of the parties dictates whether an earlier contract is discharged by a later contract. *Turner v. Turner*, 242 N.C. 533, 89 S.E. 2d 245 (1955). Applying the rationale of our statutory and case law to the facts at hand, we, therefore, look to the instruments to discern the parties' intent.

The Biggers-Evangelist contract contains a survival provision, which reads as follows:

All covenants, representations, warranties, and agreements set forth in this contract shall survive the Closing date, and shall survive the execution of all deeds and other documents at any time executed and delivered under, pursuant to, or by reason of this Contract, and shall survive the payment of all monies made under, pursuant to, or by reason of this Contract.

None of the other contractual provisions counter the clear intent of the parties, as shown in the survival provision, to avoid the doctrine of merger. Nor does the language of the deed suggest that the parties had waived the survivability of the contract by the closing date.

We conclude that the Biggers-Evangelist contract did not merge in the deed; the parties' clearly-defined intent rebuts the

presumption of merger. The Biggers were entitled to bring an action on the contract.

## II

The Evangelists pleaded the three-year statute of limitations, G.S. Sec. 1-52(9) (1983), in bar to the Biggers' original cause of action, concerning reformation of the deed on the ground of mutual mistake. Since the trial court based its judgment on the Biggers' second cause of action — the specific performance on the contract — we need not discuss the statute of limitations applicable to deed reformation further.

[2] Which statute of limitations is applicable to the Biggers' contract action? Biggers offered the contract in evidence; the word "seal" appears in brackets next to the parties' signatures. Evidence of the word "seal" in brackets is sufficient to overcome the three-year statute of limitations; thereby qualifying the contract as a sealed instrument. *Lee v. Chamblee*, 223 N.C. 146, 25 S.E. 2d 433 (1943). The ten-year statute of limitations, N.C. Gen. Stat. Sec. 1-47 (1983), applicable to actions on sealed instruments against a principal thereto, governs the Biggers' contract action.

The trial court did not err in allowing the Biggers to proceed with their contract action.

## III

Having concluded that the Biggers were entitled to pursue their action on the contract in the abstract, we now are faced with the specific enforceability of its particular terms. The trial court relied on selected language from the contract and testimony by the parties in concluding that the contract entitled the Biggers to a right-of-way over Bent Branch Road and Wild Holly Lane, and that the contract did not convey the Biggers' easements or fee title to the entire 60-foot width of Bent Branch Road for 187.59 feet. The Evangelists contend that "[t]he evidence does not support the [trial] court's findings and conclusions on the merits, but compels contrary findings and conclusions." After reviewing the language of the contract in context, discussed *infra*, we agree with the Evangelists. We conclude that the contractual terms relied on by the Biggers do not entitle them to relief; the cited terms are not enforceable against the Evangelists. We therefore reverse.

When a contract term is clear and unambiguous, the express language of the contract controls its meaning, *Crockett v. First Federal Sav. & Loan Ass'n of Charlotte*, 289 N.C. 620, 224 S.E. 2d 580 (1976), and the trial court cannot resort to extrinsic evidence to determine the parties' intent. *Renfro v. Meacham*, 50 N.C. App. 491, 274 S.E. 2d 377 (1981). Apparently, as is clear from its findings of fact, the trial court implicitly determined that the two contested terms relied on by the Biggers discussed in detail *infra*, were ambiguous since it admitted evidence of the parties' intent on each of them. We find that the first contested term, which allegedly reserved a right-of-way to the Biggers and voided the conveyance of the Biggers' easements, was unambiguous. Therefore, the express language controls, and the intent of the parties is a question of law for this Court to decide. *Lane v. Scarborough.* The second contested term, involving the property description, although arguably ambiguous, does not control. Therefore, the trial court's conclusions of law are ill-founded. The trial court's conclusions of law are reviewable *de novo* on appeal. *Humphries v. City of Jacksonville*, 300 N.C. 186, 265 S.E. 2d 189 (1980). For the reasons discussed below, we conclude that neither term grants the Biggers their desired relief.

A.

*The First Contested Term—Rights-of-Way of Bent Branch Road and Wild Holly Lane*

[3]  The deed from the Biggers to the Evangelists did not expressly reserve to the Biggers a right-of-way over Bent Branch Road and Wild Holly Lane to reach their remaining vacant property. Further, the third paragraph of the deed allegedly conveyed all the Biggers' easements as well as their "rights and interests" in Bent Branch Road and Wild Holly Lane. The third paragraph of the deed reads as follows:

> The parties of the first part do also assign and convey to the parties of the second part, their heirs, successors and assigns, all their right, title, and interest in and to the easements (i) reserved in Deed to Robert S. Speizman and wife, Carol Kantor Speizman recorded in Book 3267, Page 399 of the Mecklenburg County Public Registry, and (ii) reserved by parties of the first part in all other deeds, agreements, or instruments which are appurtenant to or relate to the prop-

erty hereinabove conveyed to the parties of the second part (including all rights and interests of the parties of the first part in and to Bent Branch Road and Wild Holly Lane).

The trial court, relying on language excerpted from the fifth clause of the contract *and on the parties' testimony*, concluded that the contract mandated the reservation of a right-of-way over Bent Branch Road and Wild Holly Lane and voided the third paragraph of the deed. The trial court found: "The Evangelists would accept conveyance of the property 'subject to rights-of-way of Bent Branch Road and Wild Holly Lane.'" From this finding, the trial court concluded that the provisions of the third paragraph of the deed, as discussed above, were "not only unauthorized by the contract but . . . directly contrary to the contract provisions, referred to above, under which the Evangelists agreed to accept conveyance 'subject to rights-of-way of Bent Branch Road and Wild Holly Lane.'" We reverse.

Preliminarily, we note that: "The intention of the parties is to be collected from the entire instrument and not from detached portions." *Westinghouse Electric Supply Co. v. Burgess*, 223 N.C. 97, 100, 25 S.E. 2d 390, 392 (1943). Therefore, we must look at the language of the fifth clause in context as well as the language of the contract as a whole. The fifth clause reads, in pertinent part, as follows:

Sellers *shall* deliver to the Buyers at the Closing, a Deed with full warranties . . . conveying to Buyers, an indefeasible fee simple marketable and insurable title to the property. . . . Said property *shall* be conveyed to the Buyers, without exception, free and clear of liens, encumbrances, claims, easements, leases, restrictions and restrictive covenants except that said property *may be conveyed subject to (i) rights-of-way of Bent Branch Road and Wild Holly Lane* (ii) public utility rights-of-way in the customary form to service the premises (iii) Mecklenburg County *ad valorem* taxes for the year 1975 and (iv) zoning ordinances of Mecklenburg County. . . . Should Buyers' attorney not approve the title to said property, Buyers' attorney *shall* advise Sellers in writing. . . . In the event that said objections of Buyers' attorney are not cured or remedied by the date of closing . . . this Contract *shall*, at Buyers' option, become null and void and be of no further legal effect. . . . (Emphasis added.)

The trial court failed to distinguish between the differing meanings of the words "shall" and "may" in the above clause. In construing contracts, ordinary words are given their ordinary meanings. *Harris v. Latta*, 298 N.C. 555, 259 S.E. 2d 239 (1979). The primary verbs used in the fifth clause are "shall" and "may." "Shall" is defined as "will have to: MUST." Webster's Third New International Dictionary 2085 (1968). "May" is defined as "have the ability or competence to: CAN." *Id.* at 1396. Since the language is unambiguous, extrinsic evidence of the parties' intent need not be considered. *Lane v. Scarborough*. The parties agreed in this clause that the Biggers would deliver a deed with "full warranties," *but* with certain exceptions. If, *at the time of the conveyance*, any or all of the conditions listed in subsections (i)-(iv) existed, the Evangelists were not entitled to declare the contract void for breach of warranty. For example, had the Biggers included an express reservation of a right-of-way in the deed, the Evangelists would not have been able to avoid their bargain. Or, if the Evangelists had discovered a prior conveyance of a right-of-way to a third party during the title search preceding the closing, they could not have voided the contract. However, the fifth clause clearly does not entitle the Biggers to seek a right-of-way after the conveyance, nor does it invalidate the senior Biggers' conveyance of their easements and their "rights and interests" in Bent Branch Road and Wild Holly Lane.

Our construction of the fifth clause is consistent with the language of the contract as a whole. Of the twenty-three clauses in the contract, only two, the fifth and the ninth, make any reference to access and rights-of-way. The ninth clause lists additional representations and warranties. It reads, in pertinent part, as follows:

> Sellers represent and warrant that . . . (vii) Buyers shall have reasonable access to and from the property from Carmel Road upon and over Bent Branch Road and Wild Holly Lane.

The ninth clause unambiguously warrants that the Evangelists will have "reasonable access." A conveyance of the Biggers' easements and "rights and interests" in Bent Branch Road and Wild Holly Lane fulfilled this warranty.

We conclude that the provisions of the fifth clause are not specifically enforceable against the Evangelists. Under the terms of the contract, the Biggers *had the power* to expressly reserve a right-of-way in the deed before the conveyance, but they did not exercise it.

B.

*The Second Contested Term—Property Description*

The property to be conveyed was only described in the first clause of the contract. The trial court, after considering testimony on the parties' intent, concluded that the contract property description invalidated the conveyance of the full 60-foot width of Bent Branch Road for 187.59 feet in the metes and bounds deed description. Arguably, the contract property description may be ambiguous, and indeed, the trial court implicitly found it so, since it admitted extrinsic evidence of the parties' intent; however, we need not reach that question, because a subsequent unambiguous parol agreement modifying the contract property description controls.

1. Contract Property Description

The first clause of the contract read as follows:

The property which is the subject of this Contract is that certain property located in Charlotte, Mecklenburg County, North Carolina, fronting Bent Branch Road and Wild Holly Lane, on which property is located a lake, swimming pool, outbuildings, and a two-story brick and frame residence, all of which is shown on a boundary and physical survey of Carolina Surveyors, Inc. dated February 21, 1975, revised April 25, 1975, entitled "A Boundary-Physical Survey for Howard R. Biggers, Jr.," a copy of said survey being attached hereto as Exhibit "A" and incorporated herein by reference. The property contains a minimum of 9.432 acres of land and is outlined in red on Exhibit "A" attached hereto.

Thus, as suggested above, the first clause could be said to contain three property descriptions: (1) the unaltered survey, including the full 60-foot wide by 187.59 foot long strip of Bent Branch Road—9.4167 acres; (2) the raw acreage—9.432 acres; and (3) the red outlined survey, containing only a 30-foot wide strip of Bent

Branch Road. Based on the first clause of the contract and the testimony of the parties' intent, the trial court concluded that the red-outlined description prevailed. However, included in the testimony and even cited in the trial court's findings of fact is evidence of a subsequent unambiguous parol agreement, which the trial court summarily dismissed as "unauthorized."

2. Subsequent Parol Agreement

[4] Evidence of the subsequent parol agreement is admissible to modify the terms of the written contract in the case. "The exclusion of parol evidence [under the parol evidence rule] on the theory that it is inadmissible to amend, vary or contradict a written instrument has no application to subsequent agreements which change or modify the original agreement." *Whitehurst v. FCX Fruit and Vegetable Svce, Inc.*, 224 N.C. 628, 636, 32 S.E. 2d 34, 39 (1944); *Hanover Co. v. Twisdale*, 42 N.C. App. 472, 256 S.E. 2d 840 (1979). The effect of a parol agreement, if its terms are unambiguous, is a question of law. *Patton v. Sinclaire Lumber Co.*, 179 N.C. 103, 101 S.E. 613 (1919).

Originally, the Biggers' attorney submitted the written contract and the survey, Exhibit "A", to the Evangelists' attorney for his approval. The Evangelists' attorney drew the red line around the boundary of the property before the parties signed the contract. His red line varied from the actual metes and bounds description by only conveying a 30-foot wide strip of Bent Branch Road for 187.59 feet. The Evangelists' attorney also requested the inclusion in the special warranties clause of the contract that "(iv) the property contains a minimum of 9.432 acres of land. . . ." After the parties had signed the contract but prior to the closing, the Biggers' attorney drafted the deed description. Attached to the Evangelists' Answer is a letter from the Biggers' attorney to the Evangelists' attorney which reads, in pertinent part:

> Enclosed is a proposed description for the Deed and Deed of Trust in regards to the Biggers-Evangelist closing. Would you review it and let me know if it meets with your approval? . . . You will note I have drawn the Deed to run to the southerly margin of Bent Branch Road and not as per your perimeter outline in red. This is a minor item, but it is for your client's benefit.

The Evangelists' attorney testified that he agreed with the Biggers' attorney, that the proposed deed description contained in the letter would be used in the deed.

The terms of the above parol agreement are clear and unambiguous. The trial court, however, appeared to discount the agreement as an unauthorized action by the Biggers' attorney. The trial court found:

> Upon the uncontradicted testimony of Mrs. Irene R. Biggers, when she 'signed the Deed,' she was not 'aware' that her and her husband's attorney, had ever 'written any such letter' and she had never authorized 'the writing of any such letter' nor had her husband ever indicated 'in any way that he had authorized such a letter.'

The Biggers do not contest their attorney's actual implied authority to negotiate the real estate transaction on their behalf. As their agent, the Biggers' attorney was acting within the scope of his actual authority, by meeting the conditions of the contract, when he drafted the deed description. Therefore, the Biggers are bound by their attorney's parol agreement made within the scope of his actual implied authority. *Investment Properties of Asheville, Inc. v. Allen*, 283 N.C. 277, 196 S.E. 2d 262 (1973).

The written contract contained a clause requiring that all amendments to the contract be in writing and signed by the parties. It is well-established, though, that a subsequent parol agreement or conduct which reasonably leads the other party to assume the contract provisions have been modified or waived is sufficient to modify or waive the provisions of a written contract, even when the contract stipulates that modifications must be in writing. *Childress v. C. W. Myers Trading Post, Inc.*, 247 N.C. 150, 100 S.E. 2d 391 (1957); *Whitehurst; W. E. Garrison Grading Co. v. Piracci Const. Co.*, 27 N.C. App. 725, 221 S.E. 2d 512 (1975), *disc. rev. denied*, 289 N.C. 296, 222 S.E. 2d 695 (1976). In this case, there is both the subsequent parol agreement and suggestive conduct.

We conclude that the modification was effective; the deed description conveying the full 60-foot width of Bent Branch Road is valid.

## C.

In summary, the terms of the contract relied on by the Biggers are not specifically enforceable against the Evangelists. Even though the contract as a whole survived the closing: (1) the contract did not expressly reserve to the Biggers a right-of-way, (2) the right-of-way language in the contract does not void the provisions in the third paragraph of the deed, and (3) the property description, as modified, does not void the conveyance of the 60-foot wide strip of Bent Branch Road. Consequently, the original provisions of the deed remain in effect.

## IV

[5]  In addition to granting specific performance of the contract, the trial court concluded that the Biggers had established a right to implied easements arising from prior use for the benefit of all their remaining property. We affirm in part and reverse in part.

An implied easement arising from prior use requires proof of

(1) a separation of the title [to an estate]; (2) before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest to show that it was meant to be permanent; and (3) the easement shall be necessary to the beneficial enjoyment of the land granted or retained.

*Potter v. Potter*, 251 N.C. 760, 764, 112 S.E. 2d 569, 572 (1960) (quoting *Bradley v. Bradley*, 245 N.C. 483, 486, 96 S.E. 2d 417, 420 (1957)); *see generally* 25 Am. Jur. 2d *Easements and Licenses* Secs. 27-33 (1966).

For an easement to be implied from prior use, the three prerequisites set forth in *Potter* must be met. The trial court concluded:

[L]aw and equity confer upon the Biggers in the present situation easements and rights-of-way by implication to use and travel upon Bent Branch Road and Wild Holly Lane for purposes of access to and from lands which they still own of the Biggers' original sixty-acre tract. The Biggers' use and need of these roads has been obvious and manifest for almost thirty years, and their continued right to travel upon such

roads is necessary to their use and enjoyment of the lands remaining of their original tract.

The only element in dispute is the "long continued and obvious or manifest" use at the time of severance. All of the Biggers' remaining land, two 3-acre tracts, one 1.22-acre tract, and one 26-acre tract, is undeveloped. Therefore, the use of the roads must be judged accordingly. We conclude that the position of the plaintiffs' vacant land adjacent to the existing roads, is sufficient to establish obvious or manifest use by inference, in the absence of alternate access. According to the Mecklenburg County Tax Map in the record, one 3-acre tract fronts directly on Carmel Road and Bent Branch Road, and a second 3-acre tract fronts only on Bent Branch Road. The survey reveals that the 1.22-acre tract is at the end of Wild Holly Lane bordering on the Evangelists' driveway. Therefore, Bent Branch Road and Wild Holly Lane are the obvious or manifest means to reach the second 3-acre tract and the 1.22-acre tract. The survey further reveals that, at the time of the severance, neither Bent Branch Road nor Wild Holly Lane bordered on the 26-acre tract. The use of Bent Branch Road and Wild Holly Lane for the benefit of the vacant 26-acre tract was completely nonexistent.

The trial court erred in concluding that the first 3-acre tract and the 26-acre tract were entitled to implied easements arising from prior use. Only the second 3-acre tract and the 1.22-acre tract are entitled to implied easements arising from prior use.

V

In conclusion, we find that the original Biggers-Evangelist deed provisions remain in effect. Consequently, the Evangelists are the fee simple owners of the 60' by 187.59' section of Bent Branch Road and are entitled to the easements conveyed under the terms of the deed. Moreover, the Biggers are not entitled to a reserved right-of-way over Bent Branch Road and Wild Holly Lane. The contract terms relied on by the Biggers to void the various provisions of the deed discussed above and to reserve the right-of-way are not specifically enforceable against the Evangelists. Further, the Biggers are only entitled to implied easements over Bent Branch Road and Wild Holly Lane arising from prior use for the benefit of the second 3-acre tract and the 1.22-acre tract.

We affirm as to the grant of implied easements for the benefit of the second 3-acre tract and the 1.22-acre tract. We reverse as to the specific performance of the contract, which, in essence, reforms the deed, and as to the grant of implied easements for the benefit of the first 3-acre tract and the 26-acre tract.

Affirmed in part; reversed and remanded in part.

Judges HILL and BRASWELL concur.