DOUGLAS E. OPSAHL AND WIFE, HILDEGARD M. OPSAHL v. PINEHURST INC., PURCELL CO., INC., AND PINEHURST RECEIVABLES ASSOCIATES, INC.

No. 8520SC1121

(Filed 3 June 1986)

1. **Cancellation and Rescission of Instruments § 4— contract for sale of land— mutual mistake of fact doctrine improperly applied**

The trial court erred in rescinding a completed contract for the sale of land on the basis of mutual mistake of fact because the parties contracted on the mistaken belief that roads and utilities would be available for the land by the date shown on the HUD report, since the mutual mistake of fact doctrine does not apply where the mistake pertains to a future contingency or probability regarding the certainty of a future performance rather than a fact which existed at the time the parties entered the agreement.

2. **Cancellation and Rescission of Instruments § 5; Vendor and Purchaser § 11— failure to complete utilities and roads— material breach of contract— rescission**

Rescission of a contract for the sale of a lot may be justified on the basis of material breach of the contract because of defendant's failure to complete roads and utilities for the lot within the time specified in the HUD report where the contract expressly provided that time was of the essence. Therefore, the cause is remanded to the trial court for the entry of findings and conclusions as to the extent of defendant's delay and whether such delay constituted a material breach justifying rescission.

3. **Evidence § 32.6— material breach warranting rescission— admissibility of parol evidence**

Where no provision of the written contract for the sale of land addressed the time when roads and utilities were to be completed, parol evidence regarding the parties' provisions for completion of roads and utilities was admissible to show whether defendant committed a material breach warranting rescission of the contract even though the written contract contained a merger clause.

4. **Deeds § 11.2; Vendor and Purchaser § 11— contract for sale of land— merger into deed— intent of parties**

The trial court on remand must determine whether the parties intended for a contract for the sale of land to merge into the deed so as to prohibit rescission of the contract where no provision of the contract or the deed addressed the survivability of the contract. In making this determination, the trial court should consider a provision of the contract suggesting that, should defendant decide, as it did, to exercise its right to transfer title prior to plaintiffs' completion of payments, the other rights and obligations of the parties shall remain in force until plaintiffs have fully paid the purchase price.

5. **Unfair Competition § 1— completion dates for roads and utilities— misrepresentations not unfair or deceptive**

While defendant's conduct in representing that completion dates for roads and utilities for subdivision lots were firm when in fact they were not came

within the scope of N.C.G.S. § 75-1.1, the court was not required to find that such conduct was unfair or deceptive.

**6. Cancellation and Rescission of Instruments § 12— rescission of contract— moving and rental expenses not recoverable**

   Should the trial court find a material breach of contract for the sale of a lot by defendant justifying rescission, plaintiffs will not be entitled to damages for moving and rental expenses voluntarily made by plaintiffs after they were aware of defendant's breach.

APPEALS by plaintiffs and defendant Pinehurst Inc. from *Albright, Judge.* Judgment entered 13 May 1985 in Superior Court, MOORE County. Heard in the Court of Appeals 8 April 1986.

Plaintiffs brought this action seeking to rescind a contract for the sale of real estate in which defendant Pinehurst Inc. (defendant) agreed to sell and plaintiffs agreed to buy a subdivided lot in Pinehurst, North Carolina. Plaintiffs' complaint alleged breach of contract or, in the alternative, breach of warranty and misrepresentation by defendant. Prior to trial plaintiffs amended their complaint to include a claim for unfair and deceptive trade practices under N.C. Gen. Stat. 75-1.1 *et seq.*

Plaintiffs' evidence tended to show, in pertinent part, that:

In February 1980 plaintiffs met with Rick Phillips, then employed as a real estate agent by defendant, regarding the purchase of a lot in defendant's development in Pinehurst. Plaintiffs explained to Phillips that they intended to retire on 31 December 1981 and that they wanted to build a home in Pinehurst. One of the lots plaintiffs viewed was Lot 615 in Unit 16, Phase 2 of Pinehurst (the lot). At this time the roads and other amenities for the lot—including water, sewer and electricity—were not completed. Plaintiffs indicated to Phillips that they wanted the lot available "to build and retire on" by 31 December 1981. Phillips assured plaintiffs that the lot would be finished on 31 December 1981 and that plaintiffs would be able to build at that time. He showed plaintiffs the property report prepared in 1979 by Pinehurst Inc. for the U.S. Department of Housing and Urban Development (HUD report) and indicated his belief that the dates shown in that report reflected when the roads and utilities would be completed. The HUD report indicated estimated completion dates of 31 December 1980 for water and sewer, and 31 December 1981 for the roads.

Based on Phillips' assurances that the completion dates in the HUD report were firm, plaintiffs decided to buy the lot. Plaintiff-wife testified that she and plaintiff-husband would not have purchased the lot without these assurances.

Plaintiffs and defendant executed a contract to purchase and sell the lot on 26 February 1980. The agreement provided for a sales price of $36,900 with a cash down payment of $14,900 and the remaining $22,000 to be financed over ten years at an annual interest rate of 9% with 120 regular monthly payments of $278.69 plus an annual assessment for police and fire protection. The contract further provided that defendant would convey the lot by general warranty deed to plaintiffs as grantees "when the purchase price has been fully paid and you have fully performed all covenants herein required and have surrendered this contract . . . ." However, the agreement also provided that defendant had the right to transfer title "at any time during this contract" and to require of plaintiffs a promissory note and deed of trust for the then outstanding balance of principal and interest on the financed portion of the sale. Pursuant to this provision, the parties transferred title to the lot from defendant to plaintiffs by a general warranty deed dated 2 March 1981 and recorded on 7 October 1981.

On 1 January 1982 plaintiffs returned to the lot and found that water, sewer, and paved roads were not yet serving it. These conditions frustrated plaintiffs' building plans. On 4 January 1982 plaintiff-husband met with defendant's assistant secretary, who assured him that plaintiffs would receive a full refund for monies paid toward the lot. In March 1982, however, defendant informed plaintiffs that they would not receive a refund but could trade for another lot. In anticipation of trading for another lot on which to build their retirement home, plaintiffs sold their existing home in Tennessee and moved to a rental home in the Pinehurst area in July 1982. Plaintiff-husband testified that at this time "[o]n Lot 615 we had no permits; we had no roads; we had nothing; couldn't hardly build on it."

Defendant subsequently failed to provide a refund or a trade for another lot. Consequently, with their savings depleted, plaintiffs moved to Illinois where plaintiff-husband returned to work. Plaintiffs then commenced this action.

The court, sitting without a jury, entered findings of fact and conclusions of law calling for rescission of the parties' agreement on the basis of a mutual mistake of fact. Specifically, the court found:

> 4. The parties contracted on the mistaken belief that all roadway and utility services would be available on the lot in question on or before December 31, 1981. Plaintiffs would never have entered into said contract had they known the true facts that indeed said amenities would not be available by December 31, 1981.

The court awarded plaintiffs "the sum of $31,257.30 paid in principal and interest toward the purchase price of [the lot]; the sum of $405.90 paid in property assessments; and the sum of $625.95 paid in ad valorem property taxes." It did not find an unfair and deceptive trade practice under N.C. Gen. Stat. 75-1.1 *et seq.*, and it did not order plaintiffs to reconvey the lot to defendant pursuant to the rescission of the contract.

From the judgment entered, both plaintiffs and defendant appeal.

*Thigpen and Evans, by John B. Evans, and Barringer, Allen & Pinnix, by Noel L. Allen and Miriam J. Baer, for plaintiffs.*

*Van Camp, Gill, Bryan, Webb & Thompson, P.A., by Douglas R. Gill, for defendant Pinehurst Inc.*

WHICHARD, Judge.

Defendant appeals from that portion of the judgment rescinding the contract on the basis of mutual mistake of fact. Plaintiffs appeal from the court's failure to find an unfair and deceptive trade practice under N.C. Gen. Stat. 75-1.1 and its failure to award plaintiffs' moving and rental expenses as contract damages.

In defendant's appeal we hold that the court should not have applied the doctrine of mutual mistake to the facts here. We further hold, however, that rescission nevertheless may be justified on the basis of a material breach of the contract by defendant.

In plaintiffs' appeal we hold that the court did not err in failing to find an unfair and deceptive trade practice under N.C. Gen.

Stat. 75-1.1. We also hold that plaintiffs are not entitled to an award for moving and rental expenses should the court, on remand, grant a rescission for material breach.

Accordingly, the judgment is affirmed in part and vacated in part, and the cause is remanded for further proceedings consistent with this opinion.

### Defendant's Appeal

[1] Defendant contends the court erred in rescinding and cancelling the contract on the basis of mutual mistake of fact. We agree.

Under certain circumstances a contract for the sale of real estate may be rescinded on the basis of mutual mistake of fact. *See, e.g., MacKay v. McIntosh*, 270 N.C. 69, 153 S.E. 2d 800 (1967). In *MacKay* the Court rescinded an executory real estate contract when the parties, at the time of execution, shared the mistaken belief that "the subject property was within the boundaries of an area zoned for business." *MacKay*, 270 N.C. at 73-74, 153 S.E. 2d at 804. The Court reasoned:

> "The formation of a binding contract may be affected by a mistake. Thus, a contract may be avoided on the ground of mutual mistake of fact where the mistake is common to both parties and by reason of it each has done what neither intended. Furthermore, a defense may be asserted when there is a mutual mistake of the parties as to the subject matter, the price, or the terms, going to show the want of a consensus *ad idem*. Generally speaking, however, in order to affect the binding force of a contract, the mistake must be of an existing or past fact which is material; it must be as to a fact which enters into and forms the basis of the contract, or in other words it must be of the essence of the agreement, the *sine qua non*, or, as is sometimes said, the efficient cause of the agreement, and must be such that it animates and controls the conduct of the parties." 17 Am. Jur. 2d, Contracts Sec. 143.

*Id.* at 73, 153 S.E. 2d at 804.

However, in *Hinson v. Jefferson*, 287 N.C. 422, 215 S.E. 2d 102 (1975), our Supreme Court expressly refused to apply the mutual mistake of fact theory to an executed, as opposed to ex-

ecutory, real estate sale contract. *Hinson*, 287 N.C. at 432-33, 215 S.E. 2d at 109-10. The parties there mistakenly assumed the subject property could support an on-site sewage disposal system and thus be suitable for a residence. *Id.* The Court explained:

> [B]ecause of the uncertainty surrounding the law of mistake we are extremely hesitant to apply this theory to a case involving the completed sale and transfer of real property. Its application to this type of factual situation might well create an unwarranted instability with respect to North Carolina real estate transactions and lead to the filing of many nonmeritorious actions. Hence, we expressly reject this theory as a basis for plaintiff's rescission.

*Id.* The Court found, instead, that defendants had breached an implied warranty arising out of the restrictive covenants that the subject property was suitable for residential purposes. *Id.* at 435-36, 215 S.E. 2d at 110-11. Accordingly, the Court held that plaintiff was entitled to full restitution of the purchase price provided she reconveyed title to the subject lot to defendants. *Id.* at 436, 215 S.E. 2d at 111.

Our Supreme Court later qualified *Hinson* in *Financial Services v. Capitol Funds*, 288 N.C. 122, 217 S.E. 2d 551 (1975). The Court there held that a real estate contract was not subject to rescission for mutual mistake of fact where the purchaser mistakenly assumed that an effective driveway permit for the subject property had been obtained by the assignor of an option to purchase the property. *Financial Services*, 288 N.C. at 137-39, 217 S.E. 2d at 561-63. The Court stated:

> Although this Court will readily grant equitable relief in the nature of reformation or rescission on grounds of mutual mistake when the circumstances justify such relief, we jealously guard the stability of real estate transactions and require clear and convincing proof to support the granting of this equitable relief in cases involving executed conveyances of land. [Citation omitted.]

*Id.* at 139, 217 S.E. 2d at 562.

In *Homes, Inc. v. Gaither*, 31 N.C. App. 118, 228 S.E. 2d 525, *disc. rev. denied*, 291 N.C. 323, 230 S.E. 2d 675 (1976), this Court, following *MacKay,* *supra*, upheld the trial court's application of

the mutual mistake of fact theory. The parties in *Homes, Inc.* mistakenly assumed that the applicable zoning ordinance permitted conversion and use of the subject property from a hotel to an apartment complex. *Homes, Inc.*, 31 N.C. App. at 119, 228 S.E. 2d at 526. The Court found that this mistake was as to a material fact and held that plaintiff was entitled to rescind the contract for sale. *Id.* at 120-21, 228 S.E. 2d at 527.

Viewing the facts here in light of the foregoing decisions, we hold that the court incorrectly relied on the theory of mutual mistake of fact as the basis for granting rescission. The court concluded that "[t]he parties contracted on the mistaken belief that all roadway and utility services would be available on the lot in question on or before December 31, 1981." While timely completion may have been material to the parties' agreement (*see infra*), it does not justify rescission based on a mutual mistake of fact. Specifically, the firmness of the completion dates pertains to future performance rather than to "'an existing or past fact . . . .'" *MacKay, supra*, 270 N.C. at 73, 153 S.E. 2d at 804. In general, to justify a rescission of a contract for a mutual mistake of fact, the mistake must concern facts as they existed at the time of the making of the contract; reliance on a prediction as to future events will not support a claim for rescission based on mutual mistake of fact. *Boles v. Blackstock*, --- Ala. ---, ---, 484 So. 2d 1077, 1081-82 (1986). *See also Duane Realty Corp. v. Great Atlantic & Pacific Tea Co.*, 8 Mass. App. Ct. 899, 394 N.E. 2d 964 (1979) (there is no mistake where a party is disappointed that its expectation as to future events proved to be erroneous). *See, generally, Restatement (Second) of Contracts* Sec. 151 (1979) at Comment a ("A party's prediction or judgment as to events to occur in the future, even if erroneous, is not a 'mistake' as that word is defined here."). The Court in *Hinson, supra*, acknowledged this distinction as a relevant factor in mutual mistake cases for determining whether the aggrieved party is entitled to some kind of relief. 287 N.C. at 430, 215 S.E. 2d at 108. In light of our Supreme Court's reluctance to apply the mutual mistake of fact doctrine to completed sales of real estate, *Hinson, supra*, and *Financial Services, supra*, we hold that the doctrine should not apply here, where the mistake pertains to a future contingency or probability regarding the certainty of future performance rather than to a

fact which existed at the time the parties entered the agreement, such as existing zoning restrictions, *MacKay, supra.*

As in *Hinson, supra,* the question now arises: "[Are] plaintiff[s] therefore without a remedy?" *Hinson,* 287 N.C. at 433, 215 S.E. 2d at 109; and the answer here is: not necessarily. It follows from *Hinson* that, although rescission for mutual mistake is not proper, the evidence may support another theory of recovery which provides plaintiffs with comparable relief. In *Hinson,* this theory was an implied warranty arising out of the restrictive covenants. *Hinson,* 287 N.C. at 435-36, 215 S.E. 2d at 110-11. The Court's substitution of theories in *Hinson* was consistent with the general principle that a trial court's "ruling must be upheld if it is correct upon any theory of law[,]" and thus it should "not be set aside merely because the court gives a wrong or insufficient reason for [it]." *Manpower, Inc. v. Hedgecock,* 42 N.C. App. 515, 519, 257 S.E. 2d 109, 113 (1979). *See also Sanitary District v. Lenoir,* 249 N.C. 96, 99, 105 S.E. 2d 411, 413 (1958) (if correct result reached, judgment should not be disturbed even though court may not have assigned the correct reasons for the judgment entered); *Payne v. Buffalo Reinsurance Co.,* 69 N.C. App. 551, 555, 317 S.E. 2d 408, 411 (1984) (it is common learning that a correct judgment must be upheld even if entered for the wrong reason).

[2] While the court here improperly based rescission on the theory of mutual mistake, rescission may nevertheless be proper on the theory of material breach of contract. We are unable to conclude from the record as a matter of law, however, whether the particular facts and circumstances warrant application of this theory. We thus vacate those portions of the judgment relating to mutual mistake and remand the cause for consideration under the theory of material breach.

> The Supreme Court has indicated that upon the breach of a contract for the purchase and sale of real estate by the seller, the buyer has the following remedies available to him, among others: (1) the buyer may sue at law for damages for the breach; (2) he may sue in equity and seek specific performance; or (3) he may abandon and thereby rescind the contract and recover what he has paid.

*Johnson v. Smith, Scott & Assoc., Inc.,* 77 N.C. App. 386, 389, 335 S.E. 2d 205, 207 (1985), *citing Brannock v. Fletcher,* 271 N.C. 65,

73, 155 S.E. 2d 532, 541 (1967). However, "[n]ot every breach of a contract justifies a cancellation and rescission." *Childress v. Trading Post*, 247 N.C. 150, 156, 100 S.E. 2d 391, 395 (1957). "The breach must be so material as in effect to defeat the very terms of the contract." *Id*. In *Childress* the Court held that a two month delay in completion of a dwelling did not justify cancellation and rescission of the parties' real estate contract where time was not of the essence. *Id*. The Court reasoned that:

> Time for completion is not normally regarded as a part of the plans or specifications for the construction of a dwelling nor is time normally a substantial or vital element in a contract of purchase and sale. [Citations omitted.]

> "As a general rule, time is not of the essence of a building or construction contract, in the absence of a provision in the contract making it such. Failure to complete the work within the specified times does not *ipso facto* terminate the contract, but only subjects the contractor to damages for the delay." [Citation omitted.]

*Id*. at 155, 100 S.E. 2d at 395. *See also Sanders v. Meyerstein*, 124 F. Supp. 77, 83 (E.D.N.C. 1954). In *Johnson, supra,* this Court, following *Childress*, held that a delay of at most two weeks in completion of a dwelling did not provide grounds for rescission where the contract did not expressly provide that time was of the essence and the Court found nothing in the contract or the parties' actions which demonstrated their intent to make time of the essence. *Johnson*, 77 N.C. App. at 390, 335 S.E. 2d at 207.

Unlike the agreements in *Childress* and *Johnson*, the contract here expressly provides that, "[t]ime is of the essence of this contract . . . ." Accordingly, timely completion of the roads and utilities may have been a substantial or material element of the contract. Thus, defendant's failure to complete the work within the times specified in the HUD report may justify plaintiffs' cancellation and rescission of the contract.

However, we cannot determine from the record as a matter of law whether defendant's delay here constitutes a material breach justifying rescission by plaintiffs. As Judge (now Justice) Mitchell stated in *Insurance Co. v. McDonald*, 36 N.C. App. 179, 184, 243 S.E. 2d 817, 820 (1978), whether failure to perform a con-

tractual obligation is so material as to discharge the other parties' performance is a question of fact for the jury or for the trial court without a jury. *See also Snider v. Hopkins*, 314 N.C. 529, 334 S.E. 2d 776 (1985) (whether plaintiff breached babysitting contract held to be a jury question).

Thus, while we cannot simply affirm or reverse the judgment as in *Hinson*, consistent with *Hinson* we hold that plaintiffs are not necessarily without a remedy simply by virtue of the court's erroneous application of the mutual mistake doctrine. Accordingly, we vacate those portions of the judgment granting rescission for mutual mistake and remand the cause to the trial court to enter findings and conclusions as to the extent of defendant's delay and whether such delay constituted a material breach justifying rescission.

Should the court on remand find a material breach justifying rescission, each party would be entitled "to be placed in *statu quo ante fuit*." *Brannock, supra*, 271 N.C. at 75, 155 S.E. 2d at 542. *See also Town of Nags Head v. Tillet*, 314 N.C. 627, 632, 336 S.E. 2d 394, 398 (1985). As the court ordered, plaintiffs would be entitled to full restitution of the purchase price, including principal and interest, assessments, and ad valorem taxes, "provided that [plaintiffs] execute and deliver a deed reconveying the subject lot to defendant . . . ." *Hinson, supra*, 287 N.C. at 436, 215 S.E. 2d at 111. "[A]s a general rule, a party is not allowed to rescind where he is not in a position to put the other in *statu quo* by restoring the consideration passed." *Bolich v. Insurance Company*, 206 N.C. 144, 156, 173 S.E. 320, 327 (1934).

[3] We note that no provision in the written agreement addresses the time when the roads and utilities were to be completed. It thus is necessary to refer to parol or extrinsic evidence to determine defendant's performance obligations under the contract in this regard. In general, "[t]he parol evidence rule excludes prior or contemporaneous oral agreements which are inconsistent with a written contract if the written contract contains the complete agreement of the parties." *Cable TV, Inc. v. Theatre Supply Co.*, 62 N.C. App. 61, 64-65, 302 S.E. 2d 458, 460 (1983). In *Cable TV* the Court held that the parol evidence rule applied to exclude parol testimony where the written contract included a

merger or integration clause which stated that "[t]his instrument constitutes the entire agreement between the parties . . . ." *Id.*

The written contract here contains a comparable merger or integration clause:

> 10. It is further mutually agreed that the terms, covenants and conditions appearing on both sides of this contract contain the entire agreement of the parties, it being understood that the authority of Seller's representatives is limited and confined to securing purchasers for the property upon the terms and conditions set out in this written agreement, and not otherwise; that sales representatives have no power or authority to make any change, alteration, modification, stipulation, inducement, promise or any representation whatsoever other than those herein stated; that said sales representatives are acting as special representatives and all representations of Seller not herein set forth are deemed waived by Buyer.

However,

> "[t]he parol evidence rule presupposes the existence of a legally effective written instrument. It does not in any way preclude a showing of facts which would render the writing inoperative or unenforceable. Thus it may be proved that . . . there was such mistake as to prevent the formation of a contract or make it subject to reformation or rescission." Stansbury, N.C. Evidence (Second Edition), Sec. 257.

*MacKay, supra,* 270 N.C. at 73, 153 S.E. 2d at 803-04. Parol evidence generally is admissible to show grounds for granting or denying rescission even if the written agreement includes a merger clause. Calamari, *et al. Contracts,* Secs. 3-4 at 113 (2d ed., 1977). Accordingly, on remand the court may consider the parol evidence in the record regarding the parties' provisions for completion of the roads and utilities in order to determine whether defendant committed a material breach warranting rescission.

[4]  We further note that the doctrine of merger may operate to render the contract here unenforceable since the parties subsequently transferred title to the lot by deed. "Generally, a contract for the sale of land is not enforceable when the deed fulfills all the provisions of the contract, since the executed contract then

merges into the deed." *Biggers v. Evangelist*, 71 N.C. App. 35, 38, 321 S.E. 2d 524, 526 (1984), *disc. rev. denied*, 313 N.C. 327, 329 S.E. 2d 384 (1985). "However, it is well-recognized that the intent of the parties controls whether the doctrine of merger should apply." *Id.* In *Biggers* the Court, "look[ing] to the instruments to discern the parties' intent," held that the "contract did not merge in the deed [since] the parties' clearly-defined intent rebut[ted] the presumption of merger [, and plaintiffs thus] were entitled to bring an action on the contract." *Id.* at 38-39, 321 S.E. 2d at 526-27. Inclusion of a survival clause in the contract coupled with the absence of any language in the deed suggesting waiver of survivability demonstrated that the parties in *Biggers* clearly intended to avoid the doctrine of merger. *Id. See also Town of Nags Head, supra*, 314 N.C. at 632, 336 S.E. 2d at 398.

The written contract here, unlike the ones in *Biggers* and *Town of Nags Head*, does not contain a survival clause. By the same token, there is no provision which expressly addresses the survivability of the contract, and the language of the deed is silent on this issue as well. Accordingly, the court on remand must also determine whether the parties intended to avoid the doctrine of merger. Should the court find that the parties did not intend to avoid it, plaintiffs may not maintain an action to rescind the contract. *Biggers, supra.* In this regard the court should consider the following provision of the contract:

> 6. It is further mutually agreed that Seller shall have the right at any time during this contract, and without waiting for full performance by the Buyer, to deliver a good and sufficient deed to the Buyer with title in the same state and condition as hereinbefore required upon fulfillment by Buyer of all the terms and conditions of this contract, and to require of the Buyer an executed promissory note and deed of trust for the balance of principal and interest, payable in the manner as herein provided. Such note and balance of purchase money deed of trust shall be upon forms satisfactory to Seller. Buyer shall do all things necessary to make such purchase money deed of trust a first lien on said property in the same condition of the title as herein called for to be delivered to Buyer.

It was pursuant to this provision that the parties transferred title even though plaintiffs had not fully paid the purchase price. This provision suggests that, should defendant decide, as it did, to exercise its right to transfer title prior to plaintiffs' completion of payments, the other rights and obligations of the parties under the contract still remain in force and thus, in essence, "survive" until plaintiffs have fully paid the purchase price. The court should consider this provision with other evidence of the parties' intent as to survivability of the contract.

### Plaintiffs' Appeal

[5]   Plaintiffs contend the court erred in failing to conclude that defendant violated N.C. Gen. Stat. 75-1.1 and that plaintiffs thus were entitled to treble damages under N.C. Gen. Stat. 75-16. We disagree. For the reasons stated below, we hold that while defendant's conduct was within the scope of N.C. Gen. Stat. 75-1.1, the court was not required to find it unfair or deceptive.

N.C. Gen. Stat. 75-1.1 provides that "unfair or deceptive acts or practices in or affecting commerce . . . are declared unlawful." "The Act does not, however, define an unfair or deceptive act, 'nor is any precise definition of the term possible.' " *Bernard v. Central Carolina Truck Sales*, 68 N.C. App. 228, 229-30, 314 S.E. 2d 582, 584, *disc. rev. denied*, 311 N.C. 751, 321 S.E. 2d 126 (1984). The facts surrounding the transaction and the impact on the marketplace determine whether a particular act is unfair or deceptive, and this determination is a question of law for the court. *Id.* at 230, 314 S.E. 2d at 584. Whether defendant acted in bad faith is not pertinent. *Id.*

Before a court can declare a practice unfair or deceptive, it must first determine whether the practice or conduct is within the scope of N.C. Gen. Stat. 75-1.1, *i.e.*, whether it "takes place within the context of the statute's language pertaining to trade or commerce." *Johnson v. Insurance Co.*, 300 N.C. 247, 261, 266 S.E. 2d 610, 620 (1980). Defendant does not contend that its conduct was outside the scope of the statute. In *Overstreet v. Brookland, Inc.*, 52 N.C. App. 444, 452-53, 279 S.E. 2d 1, 7 (1981), this Court considered the application of N.C. Gen. Stat. 75-1.1 to the conduct of a residential subdivision developer vis-a-vis plaintiff-purchasers of a lot within the subdivision. While the court there found the evidence insufficient to establish unfair or deceptive acts or prac-

tices, it is clear from *Overstreet* that defendant's conduct here is within the scope of N.C. Gen. Stat. 75-1.1.

The pertinent question is whether the evidence and findings of fact compel a conclusion of law that defendant engaged in unfair or deceptive acts or practices. "The concept of 'unfairness' is broader than and includes the concept of 'deception.'" *Johnson, supra,* 300 N.C. at 263, 266 S.E. 2d at 621. "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Id.* Specifically, "[a] party is guilty of an unfair act or practice when it engages in conduct which amounts to an inequitable assertion of its power or position." *Id.* at 264, 266 S.E. 2d at 622. "An act or practice is deceptive . . . if it has the capacity or tendency to deceive." *Id.* at 265, 266 S.E. 2d at 622. "In determining whether a representation is deceptive, its effect on the average consumer is considered." *Id.* at 265-66, 266 S.E. 2d at 622.

The court here found, in pertinent part, that:

7. It was the practice of Phillips as a land sales agent of Pinehurst, Incorporated to assure all prospective purchasers of real estate from Pinehurst, Incorporated that the dates set forth in the Property Reports filed with the U.S. Department of Housing & Urban Development were firm dates and all promised actions would be completed by the stated dates. Mr. Phillips believed at that time that the dates were firm and would in fact be met. It was his practice as a real estate agent to so assure prospective purchasers of real estate, but it was also the practice generally within the Land Sales Office of Pinehurst, Incorporated to assure prospective purchasers generally that the dates were firmly established for completion of amenities. In truth and fact said dates were not firm and were not met.

As in *Overstreet, supra,* "[w]e do not find that plaintiffs have shown that defendant's acts . . . meet any of [the *Johnson*] criteria . . . ." 52 N.C. App. at 453, 279 S.E. 2d at 7. Courts take judicial notice of subjects and facts of common knowledge. *Smith v. Kinston,* 249 N.C. 160, 166, 105 S.E. 2d 648, 653 (1958); *McClure v. McClure,* 64 N.C. App. 318, 322, 307 S.E. 2d 212, 215 (1983), *disc. rev. denied,* 310 N.C. 308, 312 S.E. 2d 651 (1984). It is common

knowledge that projected completion dates in the construction industry are often missed for a variety of reasons and may be impossible or impractical to fulfill. In light of this common knowledge and the capacity of consumers to contract with reference thereto, we do not believe the legislature intended that the representation of such dates as firm when in fact they are not, standing alone, should rise to the level of immoral, unethical, oppressive, or unscrupulous conduct, or amount to an inequitable assertion of power or position. We thus hold that the court did not err in failing to find a violation of N.C. Gen. Stat. 75-1.1 and to award plaintiffs treble damages. Plaintiffs' remedy lies in contract for material breach only.

**[6]** Plaintiffs next contend that the "court erred in failing to award as part of the reasonable contract damages moving expenses and rental incurred by the plaintiffs." While technically we need not address this contention, given our disposition of defendant's appeal, we will consider it to assist the court on remand.

In general damages for breach of contract are not available when there has been a lawful rescission of the agreement. 17 Am. Jur. 2d Contracts Sec. 516 at 1002. Our Supreme Court has recognized a limited exception to this rule where fraud is involved. *Kee v. Dillingham*, 229 N.C. 262, 265-66, 49 S.E. 2d 510, 512 (1948). In such cases a plaintiff may recover special damages sustained as the result of the fraud which rescission of the contract does not repair. *Id.* Further, plaintiffs contend that a court "will, where necessary to effect complete justice, award to the party not in default his expenses necessarily incident to the contract." 17 Am. Jur. 2d Contracts Sec. 519 at 1007.

However, the record here reveals that plaintiffs sold their Tennessee home, moved to Moore County and rented a home, and then moved away, all with full knowledge that defendant had not completed the roads and utilities by the promised dates. Thus, these were not "expenses necessarily incident to the contract" but voluntary expenditures by plaintiffs made after they were aware of defendant's breach. Accordingly, should the court on remand find a material breach justifying rescission, plaintiffs will not be entitled to damages for moving and rental expenses.

Affirmed in part, vacated in part, and remanded.

Judges ARNOLD and JOHNSON concur.