Vestlyn BMP, LLC v. Balsam Mountain Grp., LLC, 2016 NCBC 46.

STATE OF NORTH CAROLINA

COUNTY OF JACKSON

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 386

VESTLYN BMP, LLC,                        )
                    Plaintiff,            )
                                          )
            v.                            )          **OPINION AND ORDER**
                                          )
BALSAM MOUNTAIN GROUP, LLC,              )
                    Defendant.            )

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, comes before the Court upon Plaintiff's Motion to Dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)") ("Motion to Dismiss"). On April 14, 2016, the Court held a hearing on the Motion to Dismiss.

THE COURT, after considering the Motion to Dismiss, the briefs in support of and opposition to the Motion to Dismiss, and other appropriate matters of record, concludes that the Motion to Dismiss should be GRANTED, in part, and DENIED, in part, for the reasons below.

> *Adams Hendon Carson Crow & Saenger, P.A.., by Matthew S. Roberson, Esq., and Golenbock, Eiseman, Assor, Bell & Peskoe, LLP by Michael M. Munoz, Esq. for Plaintiff.*

> *Daniels Law Firm, P.C., by Walter E. Daniels, III, Esq. and Mainsail Lawyers by J. Kellam Warren, Esq. and Adam Fisher, Esq. for Defendant.*

McGuire, Judge.

## PROCEDURAL HISTORY

1.      On June 23, 2015, Plaintiff Vestlyn BMP, LLC ("Plaintiff") filed a complaint against Defendant Balsam Mountain Group, LLC ("Defendant"). On July 7, 2015, Plaintiff filed an Amended Complaint. The Amended Complaint alleges two claims for breach of contract and related claims for attorneys' fees and costs.

2.      On September 4, 2015, Defendant filed its Answer, Defenses, and Counterclaims. On December 2, 2015, Defendant filed its Amended Counterclaims, in which it asserted the following claims against Plaintiff arising out of same transactions underlying the Amended Complaint: breach of contract (Counterclaim One); mutual mistake, or, in the alternative, unilateral mistake accompanied by misrepresentation, deceitful action or misleading silence (Counterclaim Two); fraud/fraudulent inducement/misrepresentation (Counterclaim Three); negligent misrepresentation (Counterclaim Four); securities fraud (Counterclaim Five); and unfair and deceptive trade practices (Counterclaim Six).[1]

3.      On January 18, 2016, Plaintiff filed the Motion to Dismiss, seeking dismissal of all of Defendant's counterclaims pursuant to Rule 12(b)(6).

4.      The Motion to Dismiss has been fully briefed and argued, and is ripe for determination.

## FACTUAL BACKGROUND

5.      This Motion to Dismiss involves claims arising from two separate agreements entered between Plaintiff and Defendant:[2] a Sales-Purchase Agreement executed on

---

[1] Several of Defendant's counterclaims are alleged in multiple counts. For the purpose of this Opinion and Order, the Court will consider multiple counts of the same counterclaim together.

[2] Challenge Golf Group of the Carolinas, LLC ("Challenge") executed the SPA with Plaintiff. Challenge later assigned the "rights and privileges" of the SPA to Defendant. Am. Countercl. ¶¶ 1 and 2.

September 9, 2011 (the "SPA"), and an Agreement executed in 2013 (the "2013 Agreement").[3] The Court will summarize the facts surrounding the two agreements in turn.

The Sales-Purchase Agreement (SPA).

6.      On September 9, 2011, Defendant and Plaintiff entered into the SPA for the sale of real property and other assets that Plaintiff owned within Jackson County, North Carolina.[4]

7.      Among the assets Plaintiff agreed to sell to Defendant were: (a) Plaintiff's "right, title, and interest in and to certain land located in Jackson County, North Carolina and more particularly described in" an exhibit to the SPA; (b) Plaintiff's "right, title and interest in and to any other land located in Jackson County, North Carolina determined prior to closing to be owned by Plaintiff;" (c) Plaintiff's right, title and interest in and to any and all buildings and other improvements, if any, built on or attached to the foregoing land, subject to certain exceptions; (d) certain fixtures related to the foregoing property; (e) certain personal property related to BMP; (f) certain leases and other agreements related to BMP; and (g) certain contract rights of Vestlyn related to BMP.[5]

8.      The SPA provided Defendant with a "Due Diligence Period" of 44 days to "inspect and review all matters relating to the Property," and provided Defendant with the right to terminate the SPA during that diligence period.[6] Defendant also "warrant[ed] and agree[d]" that it "ha[d] examined and understands the operation and/or condition of the

---

[3] The SPA is attached to the affidavit of Mark Antoncic as Exhibit 1, and the 2013 Agreement is attached thereto as Exhibit 3. As they provide the basis for Defendant's Counterclaims, the Court considers the agreements in deciding the Motion to Dismiss. *Robertson v. Boyd*, 88 N.C. App. 437, 441, 363 S.E.2d 672, 675 (1988) ("Because these documents were the subjects of some of plaintiffs' claims and plaintiffs specifically referred to the documents in their complaint, they could properly be considered by the trial court in ruling on a motion under Rule 12(b)(6).") (quoting *Coley v. Bank*, 41 N.C. App. 121, 126, 254 S.E. 2d 217, 220 (1979)).
[4] Am. Countercl. ¶ 1.
[5] *Id.* at ¶ 3
[6] SPA § 2(B).

Property" it was purchasing, and that it "ha[d] made such examination of the operation, income and expenses of the Property, as well as other matters and documents affecting or relating to this transaction" as it "deemed necessary."[7]

9. The SPA contained a disclaimer of representations that provided as follows:

[E]xcept for and solely to the extent of the express representations and warranties of Seller set forth in this Agreement, neither Seller nor any affiliates thereof, or any employees, agents, attorneys, partners, members, officers, directors, advisors or property manager of Seller or its affiliates or any broker have made any verbal or written representations, warranties or statements of any nature or kind whatsoever to Purchaser, whether expressed or implied, and, in particular, that no representations or warranties have been made with respect to (a) the physical condition or operation of the Property . . . or (e) any other matter or thing affecting or related to the Property or the transactions contemplated hereby, except as and solely to the extent expressly set forth in this Agreement. Purchaser agrees that Seller shall not be bound in any manner whatsoever by any guarantees, promises, projections, or other information pertaining to the Property made, furnished or claimed to have been made or furnished by Seller or any affiliates, employees, agents, attorneys, partners, members, officers, directors, advisors or property manager of Seller or any broker, whether verbally or in writing, except as expressly set forth in this Agreement.[8]

10. Finally, the SPA states that Plaintiff would provide a Deed at closing, and that Defendant's "acceptance of the Deed at Closing shall constitute conclusive proof that [Plaintiff] has performed all of its obligations under this Agreement to be performed at or prior to Closing."[9] The sale of the property and assets closed in November 2011.[10]

11. Defendants allege that "prior to closing" the parties determined that Plaintiff held a lien on one of the lots within the conveyed property (the "Lot 192 Lien"), and the Lot 192 Lien "was among 'Plaintiff's right, title, and interest in and to any other land located in Jackson County, North Carolina" to be conveyed to [Defendant].' "[11] Plaintiff made "written

---

[7] *Id.* at § 11(A).
[8] *Id.*
[9] *Id.* at § 7.E.
[10] Am. Countercl. ¶¶ 2, 14.
[11] *Id.* at ¶ 4; The real property constituting Lot 192 was expressly excluded from the real property transferred to Defendant under the SPA.

and oral representations . . . that the Lot 192 Lien would be handled and transferred at closing."[12]  Defendants allege that, despite these representations, Plaintiff had no intention of transferring the Lot 192 Lien.[13]  After the closing, Plaintiff claimed that the Lot 192 Lien was not among the assets Plaintiff conveyed to Defendant by the SPA.[14]

12.     Defendant also represented to Plaintiff that 75 lots that were within a conservation easement being transferred as part of sale could be "replatted elsewhere in the development."[15]  In late 2014, Defendant learned that the 75 lots could not be replatted.[16] Defendant alleges that it "did not discover, and reasonably should not have discovered, the false and misleading representations by [Plaintiff]" before late 2014.[17]

The 2013 Agreement.

13.     In 2012, Plaintiff began pressuring Defendant purchase the Lot 192 Lien.[18] Defendant alleges that, despite its belief that it had purchased the Lot 192 Lien already as part of the SPA, it decided to negotiate the purchase of the Lot 192 Lien.[19]  The parties subsequently entered into the 2013 Agreement for the sale of the Lot 192 Lien and related assets to Defendant.[20] The 2013 Purchase Agreement states that Vestlyn "agrees to transfer and assign to [Defendant] on July 1, 2015 . . . all of [Plaintiff]'s right, title and interest in and to the Nature Center Loan Documents." The Nature Center Documents included promissory notes, deeds of trust, and "certain other loan and security documents" relating to Lot 192

---

[12] *Id.* at ¶ 5.
[13] *Id.* at ¶ 6.
[14] *Id.* at ¶ 18.
[15] Am. Compl. ¶ 7.
[16] *Id.* at ¶ 8, 16.
[17] *Id.* at ¶¶ 11 ‑13, 16.
[18] *Id.* at ¶ 19; There apparently was a structure on Lot 192 known as the Nature Center.  Am. Counterclaim ¶ 26.
[19] *Id.* at ¶ 20.
[20] Am. Compl. ¶ 21.

("Lot 192 Interest").[21] In exchange for the Lot 192 Interests, Defendants agreed to make two payments of $450,000 to Plaintiff on August 31, 2014 and on July 1, 2015.[22]

14.    Defendants allege that during negotiation of the 2013 Agreement, Plaintiff represented to Defendant that the Nature Center located on Lot 192 could be redeveloped for single or multi-family use.[23] Notwithstanding these representations, after the closing of the 2013 Agreement, Defendant learned that Lot 192 was and is restricted from being redeveloped for single or multi-family use.[24]

15.    Defendant alleges that Plaintiff's misrepresentation that the Nature Center could be redeveloped "induced [Defendant] to forego" its own investigations and that "no occurrences or events subsequent to the making of the misrepresentations reasonably caused [Defendant] to suspect or discover the existence of such fraud prior to executing the [2013 Agreement]."[25] Finally, Defendants allege that "the material misrepresentations by [Plaintiff] voided any obligation of [Defendant] to purchase the Lot 192 Interest."[26]

16.    Plaintiff has moved to dismiss Defendant's Counterclaims in their entirety pursuant to Rule 12(b)(6), contending that some of the claims are barred by statutes of limitation, are barred by the terms of the agreements between the parties, or otherwise fail as a matter of law.

DISCUSSION

17.    In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must determine "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted." *Harris v. NCNB Nat'l Bank*, 85

---

[21] *Id.* at ¶ 22.
[22] *Id.* at ¶ 23.
[23] *Id.* at ¶ 25.
[24] *Id.* at ¶ 26.
[25] Am. Compl. ¶¶ 29-30.
[26] *Id.* at ¶ 32.

N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). In making this determination, the Court must take all well-pleaded allegations of the complaint, or, in this case, counterclaim, as true. *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970). Nonetheless, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Strickland v. Hedrick*, 194 N.C. App. 1, 20, 669 S.E.2d 61, 73 (2008). A complaint can be dismissed under Rule 12(b)(6) if: (1) the complaint on its face reveals that no law supports plaintiff's claim; (2) the complaint reveals on its face the absence of fact sufficient to make a good claim; or (3) some fact disclosed in the complaint necessarily defeats the plaintiff's claim. *Mileski v. McConville*, 199 N.C. App. 267, 269, 681 S.E.2d 515, 517 (2009) (citing *Oates v. Jag, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985)).

### a. Counterclaim One – Breach of the SPA.

18.     Defendant's First Counterclaim is for breach of contract. Defendant alleges that Plaintiff was required to transfer to Defendant the Lot 192 Lien under the SPA and failed to do so in breach of the SPA. Plaintiff contends that Defendant's claim for breach of the SPA fails as a matter of law because (1) the Lot 192 Lien was not explicitly listed was not listed among the property to be transferred by the SPA and, accordingly, the merger clause bars Defendant's reliance on any representations that the Lot 192 Lien would be transferred, and (2) Defendants acceptance of the deed at closing bars the claim for breach.[27]

---

[27] Plaintiff also argues that it did not "own" Lot 192, as Defendant has alleged, and, therefore, section 1.A did not require the transfer of that interest. Pl.'s Mem. Supp. Mot. Dismiss pp. 10-11 To the extent that this argument is not subsumed under Plaintiff's other arguments for dismissal of the breach of contract claim, it is based on a strained reading of section 1.A. of the SPA. That section provides, or at least a reasonable interpretation of that section provides, that Plaintiff was to convey all of its "right, title, and interest" in two categories of land: (1) the land described in Exhibit A, and (2) other land located in Jackson County determined prior to be closing prior to owned by Seller. The Lot 192 Lien is clearly alleged to have been an interest in land owned by Plaintiff. Accordingly, this argument is without merit.

19.     To state a claim for breach of contract, a plaintiff must allege the "(1) existence of a valid contract and (2) breach of the terms of [the] contract". *See Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). Defendant clearly has alleged that the SPA was a valid contract between the parties.  Plaintiff contends, however, that the facts alleged do not support a claim of breach of the SPA.

20.     First, Plaintiff argues that the Lot 192 Lien was not explicitly included in the SPA, and the merger clause in the agreement bars Defendant from claiming that Plaintiff's written and oral representations that the Lot 192 Lien would be transferred modified the terms of the SPA. As a preliminary matter, the Court notes that Plaintiff conceded for purposes of the Motion to Dismiss that the Lot 192 Lien was a "right, title, and interest in and to" land, and that section 1.A. of the SPA provides for the transfer of any right, title and interest to land determined prior the closing.[28] Since the Amended Complaint alleges that the parties determined the existence of the Lot 192 Lien prior to the closing, it would seem to fall squarely within the interests that Plaintiff was supposed to convey pursuant to the SPA. Accordingly, Defendant's allegation that the parties "determined" that Plaintiff had a lien interest in Lot 192 following the execution of the SPA but prior to closing and that the Lot 192 Lien fell within right, title, and interests in land which were to be conveyed is not at all inconsistent with the terms of the SPA, and is not barred by the merger clause. *See Zinn v. Walker*, 87 N.C. App. 325, 333, 361 S.E.2d 314, 318 (1987) ("merger clauses . . . bar[ ] the admission of . . . terms *inconsistent* with the terms of the writing"; emphasis added). Moreover, application of the merger clause to bar the inclusion of later-determined interests in land, such as the Lot 192 Lien, would appear to contradict the intent of the parties and would render the above-quoted portion of section 1.A of the SPA meaningless. *Medical*

---

[28] Pl.'s Memo. Supp. Mot. Dismiss p. 10, n. 5.

*Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 654, 670 S.E.2d 321, 326 (2009) (stating that merger clause will not be enforced "when giving effect to the merger clause would frustrate the parties' true intentions"); *Hinshaw v. Wright,* 105 N.C. App. 158, 162, 412 S.E.2d 138, 141 (1992) (same). Accordingly, the Court finds this argument unpersuasive.

21.      Plaintiff next argues that Defendant's acceptance of the deed at closing constituted conclusive proof that Plaintiff performed all of its obligations under the SPA. Section 7.E of the 2011 Purchase Agreement provides as follows:

> The acceptance by Purchaser of the Deed at Closing shall constitute conclusive proof that Seller has performed all of its obligations under this Agreement to be performed at or prior to Closing and thereafter Seller shall have no further continuing obligations or liabilities to Purchaser . . . except for those obligations of Seller that are expressly stated herein to survive Closing.[29]

22.      Defendant contends that the language of section 7.E. is merely a statement of the common law rule, as stated in *Marriott Financial Services, Inc. v. Capitol Funds, Inc.,* 288 N.C. 122, 140, 217 S.E.2d 551, 563 (1975), which provides in pertinent part that "in the absence of collateral contractual provisions or agreements which are not intended to be merged in the deed, the acceptance of a deed tendered in performance of an agreement to convey merges the written or oral agreement to convey in the deed, the agreement to convey being discharged." Defendant argues that the SPA "contemplated multiple 'Closing Documents' to be provided by [Plaintiff]," including a "separate assignment document" conveying the interests in the Lot 192 Lien.[30]  Accordingly, Defendant argues that there were "collateral contractual provisions and agreements" related to transfer of the Lot 192 Lien that take this case outside of the common law rule.

23.      Defendant's position, however, is unpersuasive and does not square with the express terms of the SPA.  First, the common law rule has no application to this case in which

---

[29] SPA § 7.E.
[30] Def.'s Resp. Mot. Dismiss p. 8.

the parties agreed to a provision broader than the common law rule. *Opsahl v. Pinehurst, Inc.*, 81 N.C. App. 56, 66-67, 344 S.E.2d 68, 75-76, (1986) (stating that, in determining whether common law rule applies, "it is well-recognized that the intent of the parties controls whether the doctrine of merger should apply") (citation omitted). The plain language of Section 7.E. makes it clear that the parties intended the acceptance of the Deed to act as a merger of the SPA, and that they did not intend for any collateral agreements to survive closing. *See Opsahl*, 81 N.C. App. at 66-68, 344 S.E.2d at 75-76; *Biggers v. Evangelist*, 71 N.C. App. 35, 38-39, 321 S.E.2d 524, 526-527 (1984). Defendant expressly agreed that it acceptance of the Deed was "conclusive proof that Seller has performed all of its obligations under this Agreement . . . except for those obligations of Seller that are expressly stated [t]herein to survive Closing." Defendant has pointed the Court to, or even alleged the existence of, any provision of the SPA that provides that Plaintiff was obligated to deliver separate documents conveying the Lot 192 Lien, let alone that such an obligation survives closing.

24. In addition, Section 7.A. of the SPA contains the list of the "Closing Documents" to be provided by Plaintiff, and does not include reference to a separate document or documents assigning an interest in the Lot 192 Lien. To the contrary, the SPA provides that the Deed is the closing document by which Plaintiff will "convey to [Defendant] its right, title and interest."[31] Defendant contends, of course, that the Lot 192 Lien was part of Plaintiff's right, title, interest in land in Jackson County that Plaintiff was required to convey to Defendant. The SPA expressly provided that the Deed was the instrument by which Plaintiff was conveying its right, title, and interest. Defendant cannot now argue that there was a collateral agreement regarding how the Lot 192 Lien would be conveyed. Accordingly,

---

[31] SPA § 7.A(ii).

given the plain and express language of the SPA, Defendant's argument that Plaintiff had additional obligations to transfer the Lot 192 Lien separate from the SPA that survived closing must fail. Consequently, the Court concludes that the Motion to Dismiss as to Defendant's Counterclaim One for breach of the SPA should be GRANTED.

      b. *Counterclaims Three and Four – Fraudulent Inducement and Negligent Misrepresentation.*

25.    In its Third Counterclaim, Defendant alleges that Plaintiff fraudulently induced Defendant to enter into the SPA by making false representations that "that the 75 lots located within the conservation easement could be replatted elsewhere within the development,"[32] and induced Plaintiff to enter into the 2013 Agreement by misrepresenting "that the nature center located on Lot 192 could be redeveloped, including that the property could be redeveloped for single or multi-family use."[33] In their Fourth Counterclaim Defendant alleges that Plaintiff negligently made false or misleading statements to Defendant that induced them to enter into the SPA and 2013 Agreement.[34] Defendants do not allege the specific negligent representations upon which they rely in the Fourth Counterclaim,[35] but the Court assumes it is the alleged misrepresentations that form the basis of its fraud claims.

26.    To state a claim for fraud in the inducement, a claimant must allege: (i) that the defendant made a false representation or concealed a material fact he had a duty to disclose; (ii) that the false representation related to a past or existing fact; (iii) that the defendant made the representation knowing it was false or made it recklessly without knowledge of its truth; (iv) that the defendant made the representation intending to deceive

---

[32] Am. Countercl. ¶¶ 55-56.
[33] *Id.* at ¶¶ 66-67.
[34] *Id.* at ¶¶ 76-92.
[35] *Id.*

the claimant; (v) that the claimant reasonably relied on the representation and acted upon it; and (vi) the claimant suffered injury. *Harton v. Harton*, 81 N.C. App. 295, 298-99, 344 S.E.2d 117, 119-20 (1986).

27. In North Carolina, negligent misrepresentation "occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988), *rev'd on other grounds*, 329 N.C. 646, 407 S.E.2d 178 (1991). "The duty required to make the claim may either come from statute, contract, or 'may be implied from attendant circumstances.' " *USA Trouser, S.A. de C.V. v. Int'l Legwear Group, Inc.*, 2014 U.S. Dist. LEXIS 39271, *25 (W.D.N.C. Mar. 24, 2014) (quoting *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 59, 554 S.E.2d 840, 846 (2001)). A breach of the duty owed occurs when "[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions . . . ." *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 218, 513 S.E.2d 320, 323 (1999) (citation omitted).

28. Plaintiff does not contend that Defendant has failed to sufficiently allege the elements of its claims for fraudulent inducement or negligent misrepresentation, but instead argues that these claims fail either because they are barred by the applicable statute of limitations or because, as a matter of law, Defendant could not have reasonably relied on any representations made by Plaintiff.

29. Plaintiff contends that Defendant's claims for fraud and negligent misrepresentation related to the SPA are barred by the three year statutes of limitations applicable to such claims. N.C. Gen. Stat. §§ 1-52(5) and (9). These claims are "deemed to accrue upon discovery . . . of facts constituting the fraud," *Carlisle v. Keith*, 169 N.C. App.

674, 683, 614 S.E.2d 542, 548 (2005), or when "the claimant discovers the misrepresentation." *Barger v. McCoy Hilliard & Parks*, 346 N.C. 650, 666, 488 S.E.2d 215, 224 (1997). "'Discovery' is defined as actual discovery or the time when the fraud should have been discovered in the exercise of due diligence." *Spears v. Moore*, 145 N.C. App. 706, 708, 551 S.E.2d 483, 485 (2001).

30. Here, Defendant has alleged that no "occurrences or events caused or reasonably should have caused BMG to discover the existence of fraud or misrepresentation concerning the replatting of the 75 lots, until in or about the latter part of 2014."[36] Defendants further allege that circumstances surrounding the transaction "induced [Defendant] to forego additional investigation" of the misrepresentation.[37] Nevertheless, Plaintiff argues that Defendant had owned and operated the property for eleven months as of September 2012 and thus had the "capacity and opportunity" to discover the real facts, and therefore "should have discovered the alleged misrepresentations regarding the ability to replat 75 [lots] . . . in the eleven months prior to September 3, 2012."[38] *See Spears*, 145 N.C. App. at 710, 551 S.E.2d at 486.

31. Taking the allegations in the counterclaims as true, the Court cannot conclude that Defendant's fraud or negligent misrepresentation claims are barred as a matter of law by the statute of limitations. Defendants alleged that they did not discover, and reasonably should not have discovered, the true facts regarding the ability to replat the lots prior to late 2014. At a minimum, these allegations create a question about whether Defendant exercised reasonable diligence that cannot be resolved at this stage of the proceedings. *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 386 (2007) (holding the [SOL] an improper basis for

---

[36] Am. Countercl. ¶ 16.
[37] *Id.* at ¶ 12.
[38] Pl.'s Memo. Supp. Mot. Dismiss p. 12.

granting summary judgment because "[o]rdinarily, a jury must decide when fraud should have been discovered in the exercise of reasonable diligence under the circumstances"); *Piles v. Allstate Ins. Co.*, 187 N.C. App. 399, 405, 653 S.E.2d 181, 186 (2007) (reversing trial court's dismissal of fraud claims because "[t]he date of [the plaintiff's] discovery of the alleged fraud or negligence – or whether she should have discovered it earlier through reasonable diligence – is a question of fact for a jury, not an appellate court."); *Spears*, 145 N.C. App. at 709-11, 551 S.E.2d at 485-86 (reversing the trial court's grant of summary judgment on the issue of reasonable discovery).

32.     Plaintiff also argues that, as a matter of law, Defendant could not have reasonably relied on any misrepresentations or statements made by Plaintiff prior to executing the SPA and the 2013 Agreement because: (a) Defendant specifically disclaimed reliance on Plaintiff's representations; (b) the alleged misrepresentations are contradicted by the written agreements; and (c) Defendant did not exercise reasonable diligence in investigating the alleged misrepresentations.[39]

33.     Plaintiff contends that the SPA and the 2013 Agreement provide that Defendant disclaimed reliance on any representations not set forth in those documents, and that the alleged misrepresentations are contradicted by express terms of the written agreements. The SPA provided that Defendant "agree[d] that [Plaintiff] shall not be bound in any manner whatsoever by any guarantees, promises, projections, or other information pertaining to the Property made, furnished or claimed to have been made or furnished by [Plaintiff] . . . whether verbally or in writing, except as expressly set forth in this Agreement," and that Plaintiff made no representations regarding the "physical condition or operation of the Property."[40] The 2013 Agreement states that "[n]either [Plaintiff] nor [Defendant] shall

---

[39] *Id.* at p. 13.
[40] SPA § 11(A).

be bound by any conditions, definitions, or representations, whether written or oral, other than as expressly provided in this Agreement."[41]   The 2013 Agreement does not contain any representations regarding the ability to redevelop the nature center located on Lot 192.

34.     Defendant argues that, under North Carolina law, such disclaimers do not bar its claims because Defendant has alleged that it was fraudulently induced to enter into the SPA and the 2013 Agreement. *Tradewinds Airlines, Inc. v. C-S Aviation Servs.,* 222 N.C. App. 834, 842-845, 733 S.E.2d 162, 169-171 (2012) (holding that "[w]here there is a claim for fraud in the inducement, defenses based upon the fraudulently induced contract will not bar the claim" and accordingly, contract provisions did not negate assertion of reliance even where "specific language [in the agreement] . . . waived reliance upon any representations or warranties"); *see also Fox v. Southern Appliances, Inc.*, 264 N.C. 267, 270, 141 S.E.2d 522, 525 (1965) ("parol evidence is admissible to show that a written contract was procured by fraud, for the allegations of fraud challenge the validity of the contract itself, not the accuracy of its terms – the instrument itself, on the issue of fraud, is the subject of dispute."); *Parker v. Bennett*, 32 N.C. App. 46, 50,  231 S.E.2d 10, 13 (1977) ("[A]n action for fraud inducing the execution of a contract is not on the contract but in tort, and the rule that prior negotiations are merged in the writing does not apply. Therefore, we feel that allegations and evidence as to prior negotiations are competent when relevant to the question of fraudulent intent or deception.") (citations omitted); *Atkinson v. Lackey*, 2015 NCBC LEXIS 21, *19 (N.C. Super. Ct. Feb. 27, 2015) (same; citing *Tradewinds Airlines*, *supra*).

35.     Notwithstanding the above line of cases, Plaintiff contends that North Carolina appellate decisions have enforced disclaimer provisions to affirm dismissal of fraud claims, relying on *Chleborowicz v. Johnson*, 2003 N.C. App. LEXIS 1684 *8 (Aug. 19, 2003)

---

[41] 2013 Agreement § 7(d).

(unpublished) and *Ace, Inc. v. Maynard*, 108 N.C. App. 241, 249-50, 423 S.E.2d 504, 509-10 (Dec. 15, 1992). The Court, however, finds these cases distinguishable from the facts alleged by Defendant. Both *Chleborowicz* (motion for summary judgment) and *Ace* (motion for judgment notwithstanding the verdict) were decided upon evidence submitted by the parties, and not on a motion under Rule 12(b)(6). Significantly, in both cases the conclusion that the disclaimer barred the fraud claim was accompanied by a conclusion that the party claiming fraud had failed to present sufficient evidence of the underlying claim. *See Ace, Inc.*, 108 N.C. App. at 250, 423 S.E.2d at 510 ("Moreover, plaintiff failed to establish concealment of a material fact on the part of defendants because plaintiff presented no evidence that defendants knew of any defects in the plane."); *Chleborowicz*, 1992 N.C. App. LEXIS 1684, at *8-9 ("Additionally, the evidence forecast here tends to show that plaintiff and defendant discovered the crack in the hull at the same time . . . . Thus, the trial court properly concluded that plaintiff's evidence did not show the concealment of a material fact."). Given the holding of *Tradewinds Airlines*, which addressed the issue at the motion to dismiss stage, the Court concludes that the disclaimers in the SPA and the 2013 Agreements do not serve as a complete defense to Defendant's fraud and negligent misrepresentation claims at this stage of the proceedings.

36. Plaintiff next argues that Defendant cannot reasonably have relied upon the alleged misrepresentations because it failed to exercise reasonable diligence prior to executing the SPA and the 2013 Agreements. Plaintiff contends that information showing that the 75 lots could not be replatted and that the conservation easement could not be redeveloped were available in public records maintained by Jackson County, and should have been discovered by Defendant. Plaintiff argues that the SPA expressly provided Defendant with a 44 day due diligence period and that Defendant had inspected the property and satisfied itself as to its condition. Finally, Plaintiff further argues that Defendant has not

alleged "that it was prevented from conducting due diligence prior to entering into the 2013 Agreement."[42] Defendant, on the other hand, contends that it was relieved of its due diligence obligations because Plaintiff made "positive and definite representations" that were such that "a reasonable person would be justified in relying upon them without inspecting the [public] records."[43] In the Counterclaims, Defendant alleged that "[Plaintiff's] misrepresentation was a positive and definite statement of fact and well within [Plaintiff's] realm of knowledge," that and it "had no reason to doubt the veracity of [Plaintiff's] misrepresentation" because the representations were not so "improbable or unreasonable" as to require further inquiry.[44]

37.    In order to prove reasonable reliance on a representation, particularly in an arms' length transaction, North Carolina courts generally require the claimant to make an independent investigation into the circumstances surrounding the alleged misrepresentation. *See RD&J Props. v. Lauralea-Dilton Enters., LLC*, 165 N.C. App. 737, 746, 600 S.E.2d 492, 499 (2004) (stating that, with certain exceptions, "reliance is not reasonable if a plaintiff fails to make any independent investigation"); *see also Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 346, 511 S.E.2d 309, 313 (1999) (recognizing that this requirement is the same for claims for fraud and negligent misrepresentation). One critical exception to this rule, however, is where the party claiming fraud was "induced to forego additional investigation by the [other party's] misrepresentations." *RD&J Props., LLC*, 165 N.C. App. at 746, 600 S.E.2d at 499. In *Little v. Stogner*, the North Carolina Court of Appeals stated, in pertinent part, as follows:

> The . . . question is whether . . . plaintiffs' reliance on defendant's fraudulent statements was reasonable. "The reasonableness of a party's reliance is a question for the jury, unless the facts are so clear that they support only one conclusion." It is the policy of our Courts "on the one hand, to suppress fraud

---

[42] Pl.'s Memo. Supp. Mot. Dismiss p. 18.
[43] Def.'s Resp. Mot. Dismiss pp. 16-17 (quoting *Little v. Stogner*, 162 N.C. App. at 30-31, 592 S.E.2d at 9-10).
[44] Am. Countercl. ¶¶ 12, 29.

and, on the other, not to encourage negligence and inattention to one's own interest." Thus, generally, where a plaintiff fails to make any independent investigation, reliance on an assertion is deemed unreasonable.

Where, however, a defendant has resorted to an "artifice which was reasonably calculated to induce [plaintiffs] to forego investigation," plaintiffs' failure to conduct an independent investigation is not fatal to a claim for fraud. Our Courts have recognized the well-established rule in such cases "'that one to whom a positive and definite representation has been made is entitled to rely on such representation if the representation is of a character to induce action by a person of ordinary prudence, and is reasonably relied upon.'" Thus in these scenarios, the buyer of property does not "necessarily have to examine the public records to ascertain the truth where the buyer reasonably relies upon representations made by the seller."

162 N.C. App. at 30, 592 S.E.2d at 9 (citations omitted).

38. Here, Defendant alleges, ableit in conclusory fashion, that it was induced to forego additional investigation prior to entering the SPA and 2013 Agreement by Plaintiff's conduct, including its "positive and definite statement[s]."[45] While Plaintiff may ultimately be able to establish that Defendant was not reasonably diligent in investigating the alleged misrepresentations, at this stage the Court cannot conclude that the failure to plead facts related to any independent investigation on the part of Defendant necessarily defeats its claims for fraud and negligent misrepresentation.

39. Moreover, while Plaintiff argues that the accuracy of its alleged representations could be determined by examination of the property records maintained by the Jackson County Register of Deeds, those records have been presented to the Court. In contrast, in *Hudson-Cole Development Corporation*, the defendant/third-party plaintiff attached to his answer and third-party complaint the public document that contradicted the alleged misrepresentation. 132 N.C. App. at 346-47, 511 S.E.2d at 313. Accordingly, the court was able to conclude as a matter of law that reliance was unreasonable. *See Forbis v. Neal*, 361 N.C. 519, 527, 649 S.E.2d 382, 387 (2007) ("The reasonableness of a party's reliance is a

---

[45] Am. Countercl. ¶¶ 12, 29.

question for the jury, unless the facts are so clear that they could support only one conclusion."). In this case, the alleged records are not before the Court.

40.     The Court concludes that Defendant has sufficiently alleged claims for fraud and negligent misrepresentation, and that no basis exists to dismiss those claims at this time. Accordingly, the Motion to Dismiss should be DENIED as to Counterclaims Three and Four.

c. *Counterclaim Two – Mistake.*

41.     As a Second Counterclaim, Defendant seeks rescission of the 2013 Agreement on the basis of mutual or, in the alternative, unilateral mistake.  Defendant alleges that the 2013 Agreement was the product of a mutual mistake "that the nature center located on Lot 192 could be redeveloped", or alternatively, a unilateral mistake by Defendant that was "caused by misrepresentation, deceitful action, or misleading silence" by Plaintiff.[46]

42.     A contract may be rescinded on the basis of a mutual mistake regarding an existing or past fact which is material and forms the basis or the essence of the agreement between the parties. *Howell v. Waters*, 82 N.C. App. 481, 486, 347 S.E.2d 65, 68-69 (1986) (internal citations omitted). "In order for the remedy of rescission to be operable because of mistake of fact, there must be mutual mistake of fact. A unilateral mistake, unaccompanied by fraud, imposition, undue influence, or like oppressive circumstances, is not sufficient to avoid a contract or conveyance." *Id.* at 487, 347 S.E.2d at 69 (citation omitted); *see also Marriott Fin. Servs.,* 288 N.C. at 138, 217 S.E.2d at 562 (requiring fraudulent concealment to justify rescission based on unilateral mistake; citations omitted). Under either form of mistake, however, the party seeking this equitable remedy must show that it exercised reasonable diligence in investigating the facts underlying its alleged mistake. *Marriott Fin Servs.,* 288 N.C. at 138, 217 S.E.2d at 561-62.

---

[46] Am. Countercl. ¶¶ 43-46.

43.     Here, Plaintiff's only argument in support of dismissal of Defendant's claim for mistake is that Defendant has notalleged that it exercised reasonable diligence in investigating the potential redevelopment of Lot 192. The Court already has concluded that Defendant sufficiently alleged that it was induced by Plaintiff into foregoing additional investigation prior to the execution of the 2013 Purchase Agreement. For the same reasons, taking Defendant's allegations as true, the Court concludes that Defendant has sufficiently stated a claim for mistake and Plaintiff's Motion to Dismiss this counterclaim should be DENIED.

   d.  *Counterclaim Five – Securities Fraud.*

44.     In its Fifth Counterclaim, Defendant alleges that the Lot 192 Interest it purchased pursuant to the 2013 Agreement was a "security" under the North Carolina Securities Act, G.S § 78A-1 *et seq.*, and that because Plaintiff made false and misleading statements of material fact in connection with the sale of that interest, Plaintiff committed securities fraud under G.S. § 78A-56. Plaintiff argues that Defendant's securities fraud claim fails "because there was no actionable "fraud" in connection with the 2013 Agreement,"[47] and because the Lot 192 Interest is not a "security" under the North Carolina Securities Act. The Court already has concluded that Defendant has sufficiently alleged its claim for fraud regarding the 2013 Agreement.  Accordingly, Plaintiff's first argument fails.

45.     Defendant alleges that the Lot 192 Interest consisted of "promissory notes, deeds of trust, and 'certain other loan and security documents' relating to Lot 192."[48] Defendant further alleges that the "[t]he Lot 192 Interest is a security" under the North Carolina Securities Act ("NCSA").[49] The NCSA defines "security" as:

---

[47] Pl.'s Memo. Supp. Mot. Dismiss p. 20.
[48] Am. Countercl. ¶ 21.
[49] *Id.* at ¶ 94.

any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; . . . investment contract . . .; or, in general, any interest or instrument commonly known as a "security[.]"

G.S. § 78A-2(11).

46. Recognizing the dearth of case law interpreting the NCSA, this Court previously has found guidance in interpreting the NCSA's definition of "security" in decisions interpreting the strikingly similar federal definition of "security" found in the Securities Exchange Act of 1934.[50] *See NNN Durham Office Portfolio 1, LLC v. Highwoods Realty Ltd. P'ship*, 2013 NCBC LEXIS 11, **21-28 (N.C. Super. Ct. Feb. 19, 2013). These decisions explain that the determination of whether an individual transaction or product is a "security" requires an analysis of the economic realities of the transaction, and that the name of the instrument or the characterization by the parties to the transaction is not dispositive. *See, e.g., Reves v. Ernst & Young*, 494 U.S. 56, 61-62 (1990) (explaining that courts must focus on the economics of the transaction at issue and disregard form for substance); *accord SEC v. Edwards*, 540 U.S. 389, 393-94 (2004). In doing so, courts have developed analyses for determining whether instruments such as notes of various types, *Reves*, 540 U.S. at 63-68, or purported investment contracts, *SEC v. W.J. Howey, Co.*, 328 U.S. 293, 298-99 (1946), exhibit the sort of economic characteristics that warrant classification as a security. Doing so necessarily requires an analysis of the facts surrounding the transaction or instrument at issue. Although this is a fact-intensive analysis, North Carolina courts have undertaken such an analysis at the motion to dismiss stage based on the facts alleged in the complaint. *See NNN Durham Office Portfolio 1, LLC*, 2013 NCBC LEXIS 11, at **21-28.

---

[50] Moreover, some further indication of the value of relying on interpretations of comparable federal law may be found in the NCSA itself, which provides that "[t]his Chapter shall be so construed as to . . . coordinate the interpretation and administration of this Chapter with the related federal regulation." G.S. § 78A-64.

47.     Here, Defendant has not pleaded sufficient facts to establish that the Lot 192 Interest constitutes a security under the NCSA.[51] Defendant simply alleges that the Lot 192 Interest consists of "promissory notes, deeds of trust, and 'certain other loan and security documents,'"[52] and that the Lot 192 Interest "is a security and/or consists of one or more securities."[53] This latter allegation, that the Lot 192 Interest meets the statutory definition of security, is a conclusion of law, which the Court is not required to accept as true in considering the Motion to Dismiss. *See Parkdale Am., LLC v. Hinton*, 200 N.C. App. 275, 278, 684 S.E.2d 458, 461 (2009) ("A question of statutory interpretation is ultimately a question of law . . . ."). The former allegation, on the other hand, provides no factual support for Defendant's claim that those types of instruments, either separately or taken together, meet this statutory definition. Because courts have repeatedly recognized that the determination of whether a given instrument is a security is made based on analysis of the realities of the instrument and transaction, the failure to allege any facts to support the bare conclusion that the Lot 192 Interest is a security is fatal to Defendant's securities fraud counterclaim. *See Mileski*, 199 N.C. App. at 269-70, 681 S.E.2d at 517-18. Because Defendant has failed to plead any facts to suggest that the Lot 192 Interest is a security under the NCSA, the Motion to Dismiss should be GRANTED as to this counterclaim. Nevertheless, Defendant has not pleaded any facts that show as a matter of law at this stage that the Lot 192 Interest is not a security. Accordingly, this counterclaim should be DISMISSED WITHOUT PREJUDICE

---

[51] For example, Defendant has not alleged facts that would support a conclusion that the Lot 192 Interest meets the four factor analysis developed by the United States Supreme Court for determining "whether a transaction involves security." *Reves*, 540 U.S. at 66-67 (listing factors as: (1) whether the seller's purpose is to raise money or finance investments in order to make a profit; (2) whether the instrument is for "common trading for speculation or investment;" (3) whether the public would expect the instrument to be called a "security;" (5) whether there is another regulatory scheme that would render the "application of the Securities Act unnecessary.").

[52] Am. Compl. ¶ 22.

[53] *Id.* at ¶ 94.

to Defendant's right to allege facts sufficient to show that Lot 192 is a security within the meaning of the NCSA.

### e. Counterclaim Six – Unfair and Deceptive Trade Practices.

48.     In its final counterclaim (Counterclaim Six), Defendant alleges that Plaintiff's pattern of conduct, namely the fraud and misrepresentation associated with the execution of the SPA and entering that agreement without the intent to perform, constitutes an unfair and deceptive trade practice in violation of G.S. § 75-1.1. To state a claim for violation of that section, Defendant must allege that: (1) Plaintiff committed an unfair or deceptive act or practice; (2) that the action was in or affecting commerce; and (3) Plaintiff's acts proximately caused injury to Defendant. *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001).

49.     Plaintiff's only argument in support of dismissal of Counterclaim Six is that Defendant has failed to allege any misrepresentation or fraud. For the reasons above, the Court disagrees. Moreover, our appellate courts have noted that such fraud would constitute an unfair or deceptive act. *See Bhatti v. Buckland*, 328 N.C. 240, 243, 400 S.E.2d 440, 442 (1991) ("Proof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts . . . .") (citations omitted). Additionally, "the business of buying, developing and selling real estate is an activity 'in or affecting commerce' for the purposes of G.S. § 75-1.1." *Governor's Club Inc. v. Governors Club Ltd. P'ship*, 152 N.C. App. 240, 250, 567 S.E.2d 781, 788 (2002). Finally, Defendant has clearly alleged that the conduct constituting a violation of G.S. § 75-1.1 proximately caused damages.[54] Accordingly, the Motion to Dismiss should be DENIED as to Counterclaim Six.

50.     Ultimately, for the reasons stated above, the Court concludes that the Motion to Dismiss should be GRANTED, in part, and DENIED, in part.

---

[54] Am. Compl. ¶ 112.

THEREFORE, IT IS ORDERED that Plaintiff's Motion to Dismiss should be GRANTED, in part, and DENIED in part, as follows:

51.     Plaintiff's Motion to Dismiss is GRANTED as to Counterclaim One. Counterclaim One is DISMISSED, WITH PREJUDICE.

52.     Plaintiff's Motion to Dismiss is GRANTED, in part, as to Counterclaim Five. Counterclaim Five is DISMISSED, WITHOUT PREJUDICE.

53.     Except as expressly GRANTED above, Plaintiff's Motion to Dismiss is DENIED.

This the 22nd day of June, 2016.


                              /s/ Gregory P. McGuire
                              Gregory P. McGuire
                              Special Superior Court Judge
                                 for Complex Business Cases